## MILLER *v.* EASTERN OREGON GOLD MIN. CO.

*(Circuit Court, D. Oregon.   March 2, 1891.)*

1. MOTION FOR NEW TRIAL.
    Grounds of, discussed, and *held* not sufficient.

2. FOREIGN CORPORATIONS.
    A foreign corporation may be an "inhabitant" of a district or country other than that of which it is a citizen or subject, or where it was organized, within the meaning and purpose of the term, as used in section 1 of the judiciary act of 1888.

*(Syllabus by the Court.)*

At Law.   Motion for new trial.
*John Gearin,* for plaintiff.
*Arthur C. Emmons* and *Frank V. Drake,* for defendant.

DEADY, J.   This action was commenced on May 7, 1889, to recover damages for the wrongful refusal of the defendant to transfer 6,000 shares of its stock on its books, whereby the plaintiff lost the sale thereof, and was damaged $24,000.

On the same day a summons was issued against the defendant, which was personally served at once on "——— Bates, president, and J. Gilbert Bowick, director," of the defendant.   On May 17th a motion was made to set aside the service because the defendant "is a foreign corporation," and the alleged cause of action " arose without the jurisdiction of the court," and it does not appear that at the time said cause of action arose, or since, the defendant "either carried on business or had property within the jurisdiction of this court."

On May 20th the plaintiff filed his affidavit, in which it is stated that the defendant was organized in 1888 in London, England, and is owner of the Monumental mine and mill property, situate in Grant county, Or., and of no other property anywhere; that the defendant was organized to purchase and work said property, and was then engaged in so doing; that at the time of the service of the summons, as aforesaid, on Bates and Bowick, the former was president of the defendant, and the latter director thereof, and both were large stockholders therein, and were then in Oregon looking after the business of working and managing said mine.

On May 24th the motion to set aside the service of the summons was denied, and on the 25th of the same month the plaintiff filed an amended complaint, alleging therein, among other things, the facts aforesaid concerning the location and ownership of said mine, and also that the defendant is carrying on business in the state of Oregon, and "is an inhabitant" thereof.

On May 30th a demurrer was filed to the amended complaint, and on June 19th the same was withdrawn, and the defendant had leave to file a plea in abatement, which was done on July 8th.   The plea contained no denial of any allegation of fact in the complaint, but alleged that the defendant was an "inhabitant" of London.

On July 12th a demurrer was filed to this plea, and on November 20th, after argument, the demurrer was sustained.

On December 4th an answer was filed, containing denials of sundry allegations in the complaint, and a defense, to the effect that the plaintiff's shares were originally issued to one Isaac Kaufman, from whom the defendant purchased the mine, on condition that they should not be transferred until the title to the mine was obtained from the United States, which was not yet done, and this fact the plaintiff well knew when he took the assignment of his stock from Kaufman, and therefore the defendant was justified in refusing to transfer the same on its books.

On January 3, 1890, the plaintiff replied to this defense, denying it *in toto*, and alleging that the only condition attending the sale was that the defendant should be put in possession of the mine, which was duly done.

Thereafter, on July 2d, the cause was tried with a jury, when there was a verdict for the plaintiff for $24,000, with interest thereon from February 29, 1889, on which judgment was given for the plaintiff, with costs.

A motion for a new trial has been argued and submitted.

On the argument two points were made in support of the motion: (1) That in setting the cause for trial the court did not give the defendant time to get Bowick and one William E. Parsons, the trustee of the defendant, from London and New York, respectively, whereby the defendant lost the benefit of their advice and direction on the trial; and also their testimony in support of the defendant's allegations as to the terms of the contract of purchase from Kaufman.

There has been plenty of time to obtain the affidavits of these persons as to what they know on this subject and would swear to. Nothing of the kind has been done, and therefore it does not appear that they are or were material witnesses for the defense. The counsel states what he "expects to prove" by them, but, in the unexplained absence of the better evidence,—the affidavits of Bowick and Parsons,—this amounts to nothing. Nor does it satisfactorily appear that these persons might not have been here at the trial if they desired to be. They are both, in interest and effect, parties to the action, and were in the state not long before the trial. An affidavit of Kaufman's is produced, stating that he would testify in support of the defense; that he expected to be present at the trial, and was subpœnaed late the evening before to appear and testify, but that, being taken suddenly ill, he went the next morning, to save his life, to the Hot Springs in Idaho. But Kaufman is so thoroughly contradicted by the counter-affidavits on this point that he seems unworthy of credit.

And it appearing that the contract for the purchase of the mine was in writing, and is in the possession of the defendant, who has neglected or refused to produce it, oral evidence as to its contents or provision concerning the assignment of Kaufman's stock, if any, is inadmissible. Furthermore, it appears that Kaufman not only actually indorsed the shares of stock in question, and delivered them to the plaintiff, but on

learning that, under the law of Great Britain, the transfer must be made by deed, he executed a power of attorney, authorizing the execution of said deed, and delivered it to the plaintiff.   His conduct in this respect is wholly inconsistent with his proposed testimony.

Neither did the defendant at first make any such objection to the transfer of the shares on its books as that Kaufman had no right to assign them, but only that, by the limited company's act, the assignment must be made by the deed of the assignor; and when the deed was presented, then this objection of want of right in Kaufman to make the assignment was brought forward.

On the whole, I find no reason to grant a new trial on this ground.

(2) That the court had no jurisdiction to hear or determine the case, because the defendant is not, and never was, an "inhabitant" of this district.

Section 1 of the judiciary act of 1888, among other things, provides that the circuit courts of the United States shall have jurisdiction of all suits of a civil nature, where the matter in dispute exceeds the sum or value of $2,000, in which there shall be a controversy between citizens of a state and foreign states, citizens, or subjects.

"But no person shall be arrested in one district for trial in another in any civil action before a circuit or district court, and no civil suit shall be brought before either of said courts against any person, by any original process or proceeding, in any other district than that whereof he is an inhabitant; but, where the jurisdiction is founded only on the fact that the action is between citizens of the different states, suits shall be brought only in the district of the residence of either the plaintiff or the defendant."

In the judiciary acts of 1789 and 1875, following the term "inhabitant" in the above quotation, were the words: "Or in which he shall be found at the time of serving such process or commencing such proceeding."

By this means the circuit courts are given jurisdiction in the general or abstract of all suits in which, as in this case, there is a controversy between a citizen of a state of the United States and a subject of a foreign state.   The clause in the act prescribing the place where a defendant may be sued does not affect this jurisdiction.   It is so far a personal exemption in favor of the defendant, which he may waive, and consent to be sued in any district, without reference to his citizenship.   *Ex parte Schollenberger*, 96 U. S. 377.   And in *Railway Co.* v. *Harris*, 12 Wall. 65. the supreme court says that if a foreign corporation does business outside of the place of its organization, it thereby consents to be sued there,—is "found" there.

Between being thus found in a district and being an inhabitant thereof there is no substantial difference.   The reason for dropping this clause in the act of 1888, I apprehend, was the liability to hardship or inconvenience, in the case of natural persons who might be thus sued far from home and the means of defense, while traveling through the country on business or pleasure, without the least element of inhabitancy' in the case.   But this can never be the case with a foreign corporation es-

tablished in business in a district other than a place of its organization.

It is not probable that congress intended to give a corporation, the subject of a foreign state, engaged in business, with a local habitation in the United States, the option of suing a citizen of the United States in a national court, and to deny such citizen having a controversy with or a demand against such foreign subject, engaged in business in the United States, the corresponding privilege.

And yet, if a corporation, the subject of a foreign state, cannot become an inhabitant of this district, because it cannot migrate here and become a citizen of the state, such result would follow.

"An inhabitant of a place is one who ordinarily is personally present there, not merely *in itinere*, but as a resident and dweller therein." *Holmes* v. *Railway Co.*, 6 Sawy. 277, 5 Fed. Rep. 523.

A natural person may be a citizen or subject of one country and an inhabitant of another. Why cannot a corporation formed under the laws of Great Britain become an inhabitant of Oregon?

Take this case, for instance.

The defendant, the Eastern Oregon Gold Mining Company, is a corporation formed in London for the express purpose of purchasing, owning, and working a mine in Oregon. It has no other property or business, and is here in the person of its officers and agents engaged in working the mine.

The supreme court has not passed upon this question, and until it does I shall follow the dictates of my own judgment, which is that the defendant is an "inhabitant" of this district within the meaning of the judiciary act.

This question has been thoroughly considered in *Zambrino* v. *Railway Co.*, 38 Fed. Rep. 449, by Mr. Justice MAXEY, in which he came to the conclusion that the defendant, a Texas railway corporation, whose principal office and place of business was in the eastern district of Texas, was an inhabitant of the western district of Texas, because its road extended there, where it had an agent and office for the transaction of its ordinary business.

This ruling was affirmed and followed in the similar case of *Riddle* v. *Railroad Co.*, in 39 Fed. Rep. 290, by Justices McKENNAN and ACHESON.

Of course, to enable the court to exercise this jurisdiction over the defendant, the law of its procedure—the law of the state—must provide for the service of process within the district on some representative thereof.

The statutes of Oregon provide, in effect, that in an action against a private corporation the summons shall be served within the state "by delivering a copy thereof, together with a copy of the complaint, * * * to the president or other head of the corporation."

This has been done in this case, and the court thereby acquired jurisdiction of the person of the defendant, as well as the subject-matter of the suit—the controversy between the parties—which is conferred generally by the statute.

The motion is denied.