Argued March 5, affirmed April 22, costs taxed May 20, 1924.

# W. S. DIPPOLD AND J. H. DIPPOLD, PARTNERS, *v.*
# THE CATHLAMET TIMBER CO.

(225 Pac. 202.)

**Appeal and Error—Evidence and Instruction Relating to Damages
Held Harmless in View of Verdict.**

1.  Evidence and an erroneous instruction authorizing an improper element of damages *held* harmless error, where the jury
allowed nothing thereon.

**Damages—In an Action for Value of Cut Timber Destroyed by
Fire, Evidence of Quality of Timber, Contract Price and Present Value Held Admissible.**

2.  In an action for value of cut timber and of plaintiff's lumber-mill, destroyed by fire alleged to have been started by defendant, such timber having been cut pursuant to a contract (introduced in evidence) between plaintiff and a third person to sell
manufactured shingles therefrom to the latter at a certain price
per thousand, *held,* that the quality of the timber, the contract
price thereon, and the present value were all proper elements to
be introduced in evidence to inform the jury as to the nature and
value of the property.

**Negligence—Responsibility for Fire Held for Jury.**

3.  In an action for value of cut timber and of plaintiff's lumber-mill, destroyed by fire alleged to have been started by defendant, evidence *held* sufficient to go to jury as to whether defendant
was liable for the fire.

**Negligence—Care Required to Prevent Spread of Fire.**

4. The standard of care on the part of plaintiffs wherever any duty is incumbent upon them, as for instance to prevent the spreading of a fire, is the care that would be exercised by a reasonably prudent man under the same circumstances.

**Negligence—Plaintiffs' Care to Prevent Spread of Fire Held for Jury.**

5. Whether the acts of plaintiffs suing for value of cut timber destroyed by a fire alleged to have been started by defendant, in trying to prevent the spreading of the fire to their property, were what reasonable men would do under the same circumstances, *held* for the jury, so that it was proper to refuse defendant's motion for nonsuit motion for directed verdict.

**Damages—Negligence—Plaintiff's Want of Care to Prevent Damage Held No Defense, but Ground for Mitigating Damages.**

6. Plaintiffs' failure to use proper care to prevent damage to their lumber, by preventing spreading of a fire started by defendant, *held* not a defense in an action to recover the value of lumber so destroyed but was ground for mitigating the damages to the extent that the damage could have been prevented by proper care on the part of the plaintiffs.

**Damages—Negligence—Doctrine of "Contributory Negligence" Distinguished from Doctrine of "Avoidable Consequences."**

7. Contributory negligence differs from avoidable consequences in that the former is a bar which must be stated as a defense, while the latter simply goes to the lessening of the damages caused by defendant's acts; contributory negligence acting concurrently with that of the defendant, while the carelessness of the plaintiff in the matter of lessening damages is successive, and subsequent to the carelessness of the defendant.

**Negligence—Wind Seizing Fire Held not "Act of God."**

8. A strong wind *held* not an act of God if it seizes upon a fire already started by a human agency and causing the injury alleged; an act of God being an occurrence happening without the intervention or concurrence of any human agency.

**Pleading—Answer Attempting to Justify Acts Under Laws of Other State Held Conclusion of Law, and in Absence of Pleading of Terms of Statute Refusal to Predicate Instruction Thereon was Proper.**

9. In an action for value of cut timber and of plaintiffs' lumber-mill located in Washington, destroyed by a fire started by

---

5. Duty of one not responsible for kindling fire to prevent its spread to other premises, see notes in 6 L. R. A. (N. S.) 882; 45 L. R. A. (N. S.) 215.

8. Spreading by wind of fires negligently set, see notes in 36 Am. St. Rep. 824; 20 L. R. A. (N. S.) 92.

Measure of damages for wrongful cutting or destruction of standing timber, see notes in 19 L. R. A. 653; 18 L. R. A. (N. S.) 244; 52 L. R. A. (N. S.) 91.

See 4 C. J., pp. 987, 1043; 17 C. J., pp. 767, 776, 1038, 1039; 29 Cyc., pp. 441, 461, 516, 636 (1925 Anno.); 31 Cyc., p. 62.

defendant company to burn its slashings, defendant's answer that it was compelled, under Laws of Washington of 1917, page 349, and the directions of officers of that state, to burn the slashings, *held* a conclusion of law, and in the absence of a pleading of the terms of the statute referred to it was proper to refuse to instruct as to defendant's duties under that statute.

**Negligence—Defendant not Entitled to Predicate Negligence on Plaintiffs' Reliance on Defendant's Promise to Take Care of Fire.**

10. If defendant lumber company, on being notified by plaintiff of the danger of the spreading to plaintiffs' property of a fire started by defendant, reinforced its statutory responsibility to prevent the spreading, by its express promise to plaintiff to take care of the fire, defendant could not contend that plaintiffs were negligent in relying on that promise.

From Multnomah: George W. Stapleton, Judge.

Department 1.

Affirmed.  Costs Taxed.

For appellant there was a brief over the names of *Messrs. Platt & Platt* and *Montgomery & Fales,* with an oral argument by Mr. Harrison G. Platt.

For respondents there was a brief over the names of *Mr. John Van Zante, Mr. M. H. Carter* and *Mr. A. H. Tanner,* with an oral argument by *Mr. Van Zante,*

BURNETT, J.—The substance of the complaint in this action is that the plaintiffs had contracted to purchase from a third person the cedar timber on a tract of land in the State of Washington, which was to be manufactured into shingles and paid for at the rate of ten cents per thousand shingles, with the right to enter upon the land and set up machinery thereon for the purpose of such manufacture; that they had established on the land their machinery, the same being portable personal property; had engaged in the manufacture of shingles; had felled a large number of trees; cut them into logs for the purpose of such manufacture and, at the expense of

about a thousand dollars, had constructed a road for the purpose of hauling the shingles to market.

The plaintiffs charged that the defendant was engaged in logging operations about a mile west of the lands upon which they were manufacturing shingles; that near the camp of the defendant, the latter, about April 30, 1918, caused a fire to be kindled which destroyed that camp and a large amount of brush and treetops; and that afterwards, on or about May 10th, a fire was started by sparks and cinders emitted by one of the defendant's donkey-engines, which was not equipped with any spark-arrester. It is said that these fires were allowed by defendant to burn and spread so that about July 1st they were communicated to and burned plaintiffs' shingle-mill, boiler and machinery, together with cedar logs sufficient to have manufactured at least forty million shingles. The plaintiffs aver that about June 15, 1918, they notified the defendant to extinguish the fires and that the defendant then and there promised to do so, upon which promise the plaintiffs relied; and that the defendant failed, willfully, carelessly and negligently, to extinguish the fires. After setting out the terms of the contract for the timber, the complaint alleges:

"That plaintiffs could and would have realized from the manufacture of said timber into shingles a net profit of fifteen cents per thousand shingles, aggregating the sum of $6,000 and that by reason of the aforesaid carelessness and negligence of said defendant they were prevented from manufacturing said timber into shingles and from making said gain and profit thereon and plaintiffs further allege that under the said contract with said Bertha E. Martin the price they had agreed to pay her for said timber was ten cents per thousand shingles and that said timber was worth in the market and had a market value at the time it was so burned the sum of twenty-five cents per thousand shingles and that by reason of the prem-

ises plaintiffs are and have been damaged by the burning and destruction of said timber so burned and destroyed by said fires as aforesaid in the sum of $6,000.''

The answer traverses the complaint in almost every particular.   Further answering, the defendant admits that in the spring of 1918 it started a fire for the purpose of burning slashings which had accumulated during its logging operations and that after those slashings were burned, the fire was extinguished and that afterwards ''the spring rains began and wiped out said fire and all evidence thereof.''   It is further said that more than two months after the fire was extinguished, other fires developed from causes unknown to the defendant, near where it was engaged in logging; that it did everything it could to prevent its spreading and to extinguish the fire but without success and that a high wind developed, causing a spread of the fires, ultimately destroying the timber and mill of the plaintiffs, and the defendant maintains that the fires were caused by an act of God or by other parties besides the defendant, and that in all matters the defendant complied with the laws of Washington.   What those laws were at the time is not stated in the answer.   The reply traversed the new matter in the answer.

The jury found a verdict in favor of the plaintiffs as follows:

''As compensation for the loss of the use of the road $——.

''As damages for the destruction of the down timber $2,250.

''As damages for the destruction of mill, machinery, boilers and temporary building $1,600.''

1, 2. From the ensuing judgment the defendant appeals.

There are two assignments of error predicated upon the trial court allowing the plaintiffs to introduce evidence of the value of the road and instructing the jury to consider the cost thereof as an element of damage. The error thus noted is harmless in view of the fact that the jury allowed nothing whatever for the value of the road. It is assigned as error that the court refused to strike out all evidence of profit that the plaintiffs might have made from their contract. This assignment is not apropos as the effort of the plaintiff was not to recover profits but to recover the value of the timber which had been cut down and was destroyed. Incidentally, the nature of the contract appeared in the evidence. The plaintiffs had been operating under their contract and had manufactured and shipped some of the shingles. The quality of the timber, the contract price thereon and the present value of the timber were all proper elements to be introduced in the evidence, to inform the jury as to the nature and value of the property. In *Aune* v. *Austin Williams Timber Co.*, 52 Wash. 356 (100 Pac. 746), cited by the defendant on another point, we find that the plaintiff there had contracted to cut poles on the defendant's land and to yard them to the latter's skid road, after which the defendant was to haul them to navigable water. A fire started by the defendant and carelessly managed by it destroyed the poles. It was objected there as here, that the plaintiff could not recover the value of the poles because the contract for their manufacture had not been completed; but the court said:

"The respondent had a certain value invested in these poles, and that value was destroyed by the negligence of the appellant. The respondent was not working for wages, nor was the appellant to pay him under their contract for the value of his wages.

Therefore he was entitled to his bargain under his contract.''

Manifestly, having gone into possession of the property and done important and considerable acts in the performance thereof, the plaintiffs here had property there which has been destroyed. If the defendant had gone upon the land and carried away the logs, it is very plain that the plaintiffs could have maintained replevin for them and have secured the alternative judgment for the value of them in case a return of the property could not be had. Neither the evidence nor the pleading presents the recovery of speculative profits. It is a question of recovering damages for the destruction of valuable property.

3. It is likewise noted as error that the court refused to strike out all the evidence introduced by the plaintiff because it did not connect the defendant with the tort alleged in the complaint of instituting a fire on April 27th and another on May 10th, and for the further reason that there was no direct evidence showing any connection between the fire alleged in the complaint and the fire proven upon the trial of the case. This objection goes, not to the *quantum* of the evidence, but maintains that there is no evidence connecting the defendant with the fires which destroyed the mill. There is the direct testimony of the plaintiff J. H. Dippold to the effect that the mill was burned by the fire coming from the defendant's property which was burning in June, that he interviewed the defendant's foreman about it on June 22d when the latter promised to take care of the fire, and that the same fire which he promised to care for was the one which destroyed the mill. This testimony alone would be sufficient to take the case to the jury as to whether the defendant was liable for

the fire.   The jury would have a right to conclude that if it were not responsible for the burning, it would not agree to take care of the fire.

4, 5. It is assigned also as error that the court refused to grant the defendant's motion for nonsuit and it is said in support of that assignment that it appeared from the evidence of the plaintiffs that they did not use reasonable care to avoid the avoidable consequences of the fire which they knew was spreading to their land and that the plaintiffs were guilty of negligence in not aiding the defendant in trying to prevent the spread of said fire.   The same question was raised by a motion to direct a verdict for the defendant.   The standard of care on the part of the plaintiffs wherever any duty is incumbent upon them in such a case is the care that would be exercised by a reasonably prudent man under the same circumstances.   It is only when there is no evidence on that subject that the court would be authorized either to grant a judgment of nonsuit or a directed verdict. In the instant case, we have the evidence of W. S. Dippold that he and his boy went and tried to put out the fire about the latter part of June, 1918, but could not do it.   It is admitted in the evidence that the fire-warden, accompanied by one of the plaintiffs, went to interview the foreman in charge of the defendant's operations and notified him of the fire and that it was spreading towards the property of the plaintiffs and that the foreman promised to take care of the fire and prevent its doing any damage.   There is also evidence to the effect that when the fire was coming closer to the mill the plaintiffs covered up what property and tools they could and did a great deal of work toward protecting the property from the blaze until they were driven out by the heat.

Whether the doings of the plaintiffs were what rea-
sonable men would have done under the same cir-
cumstances was for the jury to determine. The court
could not say as a matter of law that the conduct of
the plaintiffs was not that of reasonable men.

6, 7. Moreover, we must remember there was no
plea on the part of the defendant charging the plain-
tiffs with contributory negligence. The utmost that
can be claimed for the defendant, based upon the
failure of the plaintiffs to use proper care to prevent
damage, is that the ensuing damage should be miti-
gated to the extent that it could have been prevented
by proper care on the part of the plaintiffs. This is
the doctrine taught by the case of *Theiler* v. *Tillamook
County*, 81 Or. 277 (158 Pac. 804). There, the county
had erected a bridge and culvert on one of its high-
ways in such a manner as to divert the waters of a
creek into a different channel, whereby the soil of
the plaintiff's premises was greatly damaged. The
court instructed to the effect that the defendant was
not liable for such continuing damage as the plaintiff,
by the exercise of reasonable care, could have pre-
vented. In that case there was, as here, no plea of
contributory negligence. Mr. Justice BENSON, writing
the opinion, pointed out with clarity the distinction
between contributory negligence as a bar to an action
for damages and mitigation of damages arising from
the plaintiff's failure to exercise reasonable care in
avoiding the results of injury after same has hap-
pened. As throwing light upon the question, it is well
to quote again the rule stated in 1 Sedgwick on Dam-
ages (8 ed.), Section 204, cited with approval by Mr.
Justice BENSON:

"The application of the doctrine of contributory
negligence and of that of avoidable consequences often

produces results that closely resemble each other; but there is a distinction between the two. Contributory negligence defeats the action itself. The rule of avoidable consequences can never produce this result, as it cannot be applied until a cause of action, which in any event will entitle the party injured to nominal damages, has arisen. (b) The rule therefore is really a rule of limitation upon the plaintiff's recovery. Nor is it properly to be regarded as a species of mitigation of damages. This relates to the defendant, and generally to the character of his acts; e. g., that a tort was not malicious; that, after committing a trespass, he repaired the wrong as far as possible. But a reduction of the plaintiff's damages by any such particulars as flow from his own imprudent act, or omission to act after the wrong has been committed, constitute a distinct class of remote damages in the strict sense of the word; of damages which flow from the illegal act, but for which the law gives no redress.''

The position of the defendant here on this branch of the case would forbid any recovery whatever and would count as a bar. That which Mr. Justice Benson points out can only be received in mitigation of damages. Contributory negligence and avoidable consequences are two quite different things. The one is a bar to any action whatever and must be stated as a defense. The other simply goes to the lessening of the damages caused by the acts of the defendant. Whether in all cases evidence on that point may be admitted under the general issue is not here decided. Contributory negligence acts concurrently with that of the defendant. They are synchronous in their operation. The carelessness or indifference of the plaintiff in the matter of lessening damages is successive and subsequent to the carelessness of the defendant. They do not take·effect at the same time. The defendant's negligence has spent its force and is past.

It is succeeded by that negligence of the plaintiff which causes an enhancement of the damages. The two are not to be confounded although in some instances the result, that is, the obliteration of damages, may be almost identical. All the assignments of error made by the defendant in the instant case are based upon the fallacy that contributory negligence may be relied upon as a bar to any action without pleading same. That its position is erroneous is amply shown by the Theiler case.

8. Again it is charged that

"The court erred in refusing to instruct the jury as requested by the defendant that a strong wind arising during the progress of a fire is an intervening cause, and when an act of God is the cause of loss, a plaintiff must show that the negligence of the defendant was the cause independently of the act of God."

An act of God is an occurrence happening without the intervention or concurrence of any human agency. If it had appeared that lightning had struck and fired the timber, in consequence of which alone the logs had been consumed, that would have been an act of God. But here, the evidence is that the fire was set out by the defendant for the purpose of burning its slashings and one theory it advances is that this fire smoldered and ran under ground for some time, after which it was fanned by the winds and caused the destruction of the plaintiffs' property. Whatever may be said of the effect of high winds, yet it is plainly not an act of God if it seizes upon a fire already started by human agency and causes the injury stated: *Rosenwald* v. *Oregon City Transp. Co.,* 84 Or. 15 (163 Pac. 831, 164 Pac. 189).

111 Or.—14

9. Certain assignments of error are predicated upon the refusal of the court to instruct the jury about the duties of the defendant under the statutes of Washington. The defendant, however, does not plead any statute. Indeed, in its answer it alleges that

"it was compelled, by virtue of the laws of the State of Washington, Chap. 105 of the Laws of Washington for 1917, and by virtue of the directions of the officers of the State of Washington appointed to carry said laws into effect, to burn the slashings which had resulted from the carrying on of said logging operations," etc.

This, however, is only a conclusion of law and in the absence of a pleading showing what indeed were the very terms of the statute referred to, we cannot say whether the defendant's duty is correctly delineated or not.

10. Further descanting upon the matter of contributory negligence as a matter of defense, and alluding to the rule respecting the duty of the plaintiff to use reasonable diligence to avoid the enhancement of injury arising from the negligence of the defendant, the court instructing the jury used this language:

"If they saw the fire coming and went and notified the parties that they felt were responsible for it, and you should find from the testimony that those parties were notified and agreed to look after it, then I instruct you, as a matter of law, that the plaintiffs would have a right to rely upon that promise and go about their business. They had brought to the attention of the parties responsible for the fire, if you should so find the condition to be that they were responsible for it, the danger, and the defendant had given to them a promise that they would take care of it and protect it, the plaintiffs would have a right to rely upon that promise and go about their business. And if the defendant failed to keep its promise and the loss resulted, the fact that the plain-

tiffs did no more in order to protect themselves would not operate as a defense to the defendant.''

In the first place, the plaintiffs are entitled to act upon the presumption that the defendant would obey the admitted statute of the State of Washington requiring any person who kindled a fire upon his own land to take such care of it to prevent it from spreading and doing injury to another man's property as a prudent and careful man would do and if he failed to do so, he would be liable in an action to any person suffering damage thereby, to the full amount of such damage. If the defendant, on being notified of the situation, re-enforces its statutory responsibility by its express promise to the plaintiffs to take care of the fire, it does not lie in the mouth of the defendant to say that the former were negligent in relying upon that promise. Moreover, the conduct of the plaintiffs as described in the instructions would not, in the light of *Theiler* v. *Tillamook County,* be a defense or bar to the action. It would only go in mitigation of damages and the court was quite right in saying that it would not be a defense to the action. The rule is thus laid down in 20 R. C. L., page 117, Section 101:

"While a person who asserts a right of recovery on the ground of negligence must be prepared to show that he exercised vigilance to discover and avoid the danger embodied in the offending instrumentality, he excuses himself for an omission to take active measures—such as looking, listening, and making inspections—by proof that the defendant owed to him a duty of care, and that he relied upon the performance thereof. The presumption is that duties fixed by law ·or custom will be discharged in due form; and everyone to whom a duty is due has a right to assume that it will be performed—he need not anticipate negligence on the part of his obligor, even though the latter has been negligent on other occasions. It is hardly necessary to say that no one

is bound to take precautions against injuries intentionally inflicted by others. On the contrary, he may go on the assumption that all precautions required by statute, or established rule or custom, will be taken; and *a fortiori* he may rely upon express assurances of safety."

We cannot say as a matter of law that the plaintiffs should have extinguished the fires by their own efforts at any time after they were started or that they were negligent in not so doing or in relying upon the promise of the defendant to take care of the fire. The instructions requested on behalf of the defendant assumed that the extinguishing of the fire was the only thing that could have been done to discharge the duty of a reasonably prudent man. This invades the province of the jury whose duty was to determine whether what was done on behalf of the plaintiffs conformed to the standards of a reasonably prudent and careful man. On the whole case there was no error and the judgment must be affirmed.

AFFIRMED. COSTS TAXED.

RAND, BROWN and McCOURT, JJ., concur.