Argued October 17, 1956, affirmed May 15, 1957

# ENCO, INC. *v.* F. C. RUSSELL COMPANY

311 P. 2d 737

*Howard I. Bobbitt,* Portland, argued the cause for appellant. On the briefs were Morris & Bobbitt, and Thomas J. Moore, Portland.

*Arno Denecke,* Portland, argued the cause for re-spondent. With him on the brief was John E. Walker, Portland.

Before WARNER*, Chief Justice, ROSSMAN, PERRY** and McALLISTER, Justices.

PERRY, C.J.

The plaintiff Enco, Incorporated, an Oregon cor-poration, brought an action for damages against the defendant F. C. Russell Company by reason of defend-ant's breach of an oral contract. Defendant is an Ohio corporation with its principal place of business in the city of Cleveland, and it is not licensed to do business in this state. Defendant moved to quash the service of summons, served upon its vice-president in the state of Oregon, upon the grounds that the defendant was not doing business in this state and, therefore, was not subject to the jurisdiction of our courts. The trial court denied defendant's motion to quash and a trial of the issues resulted in a judgment for the plaintiff. From assigned error in failing to sustain the defend-ant's motion to quash, and alleged errors occurring in the trial of the cause, the defendant appeals.

We shall first consider whether or not the trial court was in error in refusing to sustain the motion to quash. We are concerned here only with jurisdiction of the trial court for the service of process and not with jurisdiction for taxation, license, or other pur-poses.

It is, of course, essential to the maintenance of this action for a judgment *in personam* that the defend-ant be subject to the jurisdiction of our state courts. A

---

* Chief Justice when case argued.
** Chief Justice when this decision rendered.

foreign corporation is subject to the jurisdiction of the courts of this state, whether it has complied with our statutory requirements for doing business herein or not, if it is, in fact, doing business in this state in such a sense as to confer jurisdiction upon the courts of the state (*Winslow Lbr. Co. v. Edward Hines Lbr. Co.,* 125 Or 63, 266 P 248), and is then amenable to the judgments of the courts, providing the statutory requirements for service of summons have been had upon it.

The trial court could find the following facts from the affidavits and depositions offered upon the motion to quash the service of summons:

(1) The defendant F. C. Russell Company is a corporation organized and existing under and by virtue of the laws of the state of Ohio with its principal place of business and general offices in Cleveland, Ohio, and is engaged in the manufacture and sale of its trade name windows.

(2) This company does business as a supplier with two companies located in Oregon, one company purchasing a product known as its "Thermoseal Combination Window," and the other company purchasing its "Rusco Prime Window." It has no financial interest in these companies, is not licensed to do business in the state of Oregon, and does not now maintain an office or paid employees therein.

In the early part of the year 1951, through the negotiations of its agent Northern Enterprises, Inc., with offices in Seattle, Washington, and Anchorage, Alaska, the defendant F. C. Russell Company entered into contracts to furnish building contractors in Alaska with its steel windows. Before the steel-sash windows were satisfactory to the contractors for use in Alaska, the defendant was required to incase them in a wooden frame known to the trade as a "surround."

In March, 1951, the defendant employed the plaintiff company to manufacture these surrounds to fulfill two Alaska contracts. The plaintiff prior to this time had not engaged in the manufacture of wood surrounds, and, because of the plaintiff's inexperience, the defendant sent its field engineer, Ren DeBoer, to Portland, "to help in the manufacture, assembly and shipment of Rusco window units to Alaska"; that his instructions were "to check on the handling, the assembly, and delivery of the units, in that they be correct in all details as per the contracts involved"; and that the "prime contract between Anderson-Montin-Benson and the F. C. Russell Company called for the delivery of a certain number of Rusco units complete with wood surrounds, crated for overseas shipment as per their contract with army engineers of Alaska." These windows were to be delivered to the Alaskan contractors by the defendant at the Portland docks. All "Rusco" windows to be incased by the plaintiff under these agreements were shipped by the defendant to itself at Portland. Mr. DeBoer inspected them and filed all claims with the carrier for losses on behalf of defendant. After the windows were installed in the surrounds they were crated, "marked or labeled, stenciled to their destination, and taken to the dock here in Portland." All this was done "under the supervision of the Russell Company." Mr. DeBoer used his hotel room and space in the plaintiff's quarters for his office work.

Prior to the completion of the above-mentioned contracts, the defendant entered into a contract with Peter Kiewit Son's Co., a corporation, (hereinafter referred to as "Kiewit"), an Alaskan builder, to furnish it with defendant's Rusco windows. Before the defendant entered into the Kiewit contract, it obtained from the plaintiff a firm bid for the manufacture of the sur-

rounds. Defendant then prevailed upon plaintiff to contract directly with Kiewit for manufacturing the surrounds, crating and delivering the incased Rusco windows to Kiewit at the docks in Portland.

At the time the Kiewit contract was negotiated, Ren DeBoer was still in Portland, and was to remain through the Kiewit contract. However, shortly thereafter, because of illness, he left, suggesting to plaintiff that its Mr. Woodward was capable of carrying on his duties. Mr. Woodward then assumed the duties formerly performed by Mr. DeBoer, but received his pay from the plaintiff and none from the defendant.

In prevailing upon the plaintiff to enter into the agreement directly with the Kiewit company to furnish the necessary surrounds, the defendant agreed with plaintiff to furnish the Rusco windows to be incased in the surrounds at regular intervals of time so that the plaintiff could fulfill its agreement with the Kiewit Company, and, relying upon this agreement, plaintiff entered into the contract with Kiewit.

It is the failure of the defendant to deliver the windows to the plaintiff as agreed that gives rise to this litigation.

All Rusco windows to be furnished by the defendant under the Kiewit contract were consigned by the defendant to the Kiewit Company at Portland in care of the plaintiff.

After the plaintiff claimed a breach of the agreement by the defendant, the plaintiff discussed the matter with a Mr. Taft of Northern Enterprises and a Mr. Connally, West Coast sales representative of the defendant. In May, 1952, Mr. Raquet, a vice-president of the defendant company, came to Portland, and while there attempted to get in touch with Mr. Hollenbeck, the president of the plaintiff company, to "try to ar-

rive at some settlement'' of the difficulty between the parties. Before Mr. Raquet was able to contact Mr. Hollenbeck, he was served with summons in this cause by the sheriff of Multnomah county, Oregon.

Since the defendant did not comply with our statutes for permission to transact business within our state, the two vital questions that must be decided are: (1) Did the defendant transact business in the state that will subject it to the processes of our courts? (2) Since defendant had no designated agent upon whom service could be made, was the service of summons upon its vice-president in the state of Oregon sufficient?

Whether a corporation is ''doing business'' in a state foreign to its birth involves, in the final analysis, a question of due process under the Constitution of the United States. *Wells F. & Co. v. McArthur Bros. M. Co.*, 42 Ariz 405, 26 P2d 1021; *Walter M. Toole Co. v. Distributors' Group*, 217 Iowa 415, 251 NW 689; 23 Am Jur 341, Foreign Corporations § 363.

A foreign corporation may be doing business in a state so that it will be subject to the processes of the courts, but the business conducted may not be such as will require its domestication. *Mergenthaler L. Co. v. Spokesman Pub. Co.*, 127 Or 196, 270 P 519; *Rashford Lumber Co. v. Dolan*, 122 Or 572, 260 P 224; Ann. 60 ALR 995; 101 ALR 127; 8 Thompson, Corporations (3rd ed) 845, § 6625. These cases are to be distinguished from the problem presented here.

██ This court in compliance with the earlier decisions of the federal courts adopted the implied consent theory for sustaining the jurisdiction of its state courts over suits brought therein against foreign corporations. This theory was based upon the fiction that a foreign corporation doing business in a state foreign to its birth consented to be found in that state. The

purpose of the court in adopting the "implied consent" theory is well expressed in *Aldrich v. Anchor Coal Co.,* 24 Or 32, 35, 32 P 756, as follows:

"* * * The inconvenience and often manifest injustice of exempting a corporation from being sued in a state other than that in which it was created has caused the rule in modern times to be very much relaxed, and it is now generally held that where a corporation created in one jurisdiction is permitted, either by express enactment or by acquiescence, to do business in another, it is to be deemed a resident, and subject to the jurisdiction of the courts of the latter in all matters founded upon contracts made, or causes of action arising there, and service may be made upon it in the same manner as a domestic corporation, where the law does not provide otherwise: 2 Morawetz, Corporations, 980; Miller v. Eastern Or. Mining Co., 45 Fed. 345; St. Clair v. Cox, 106 U.S. 350 (1 Sup Ct. Rep. 354)."

And "It is settled law in this jurisdiction that a foreign corporation doing business in Oregon is to be deemed a resident of Oregon in such sense as that it is amenable to the processes of the Oregon courts, and a personal judgment may be secured against it based on the service of summons in this state: *Aldrich v. Anchor Coal Co.,* 24 Or 32, 35 (32 Pac. 756, 41 Am. St. Rep. 831); *Farrell v. Oregon Co.,* 31 Or 463, 467, 468 (49 Pac. 876). It is believed that these authorities go no further than to hold that a corporation by tranacting business in Oregon consents to be found therein for the purpose of service of summons upon it." *Hamilton v. North Pac. S. S. Co.,* 84 Or 71, 77, 164 P 579.

The question of what facts were sufficient to establish the doing of business in a foreign state to comply with the due process clause of the constitution as determined by the federal courts has been a vexing problem

in the appellate courts of the various states. No hard and fast rules have been established by this court for determining when a foreign corporation that has not sought domestication is considered to be doing business, but certain tests have been applied, such as maintaining an office and salaried representative within the state for the purpose of transacting a portion of the corporation's business, and, when these facts existed, the jurisdiction of the state court was sustained. *Winslow Lbr. Co. v. Edward Hines Lbr. Co.*, supra.

■ However, more recently the Supreme Court of the United States has enunciated and set forth certain rules which are controlling in determining what facts are important to establish the "doing of business" by a foreign corporation in a state. *International Shoe Co. v. Washington*, 326 US 310, 90 L ed 95, 66 S Ct 154, 161 ALR 1057. In this case at page 317 the court points out that:

"* * * Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' or principal place of business is relevant in this connection. Hutchinson v. Chase & Gilbert, supra, 141 [45 F2d 139]."

This new concept simply inquires as to whether or not the contacts of the foreign corporation within the state are such that it should, in fairness, respond to that court's processes.

■■ Since the obligation sought to be placed upon the defendant arose out of a contract consummated between the parties in this state, and this contract is said

by the plaintiff to have been breached in this state, we are of the opinion that all requirements of due process as defined in *International Shoe Co. v. Washington,* supra, are met. "When the cause of action arises in Oregon, the courts of this state are a proper forum in which to litigate the controversy." *Hamilton v. North Pac. S. S. Co.,* 84 Or 71, 81, 164 P 579.

■ The defendant also contends, even though it had been doing business in this state, that, since the cause of action upon which plaintiff sued accrued subsequent to its activities within the state, service of summons cannot be had in this state.

Section 77-317, OCLA, provides:

"In the event any foreign corporation shall withdraw from the state and cease to transact business therein it shall continue to keep and maintain an attorney in fact within this state upon whom service of process, pleadings and papers may be made until the statute of limitations shall have run against any one bringing an action against the said corporation which accrued prior to its withdrawal from this state."

From this statute defendant draws the conclusion that there was established a legislative intent that any foreign corporation which had transacted business in the state should not be required "to appear and defend actions accruing after their withdrawal from the state."

This statute applies only to foreign corporations which had sought domestication and complied with the licensing laws of the state before entering into transactions within the state, and has no bearing upon the issue here presented.

■ The rule applicable to service of summons upon a foreign corporation by service upon its representative found within the state upon a cause of action

arising in that forum is stated in *Perkins v. Benguet Mining Co.*, 342 US 437, 444, 96 L ed 485, 72 S Ct 413, as follows:

> "Today if an authorized representative of a foreign corporation be physically present in the state of the forum and be there engaged in activities appropriate to accepting service or receiving notice on its behalf, we recognize that there is no unfairness in subjecting that corporation to the jurisdiction of the courts of that state through such service of process upon that representative. This has been squarely held to be so in a proceeding *in personam* against such a corporation, at least in relation to a cause of action arising out of the corporation's activities within the state of the forum."

Citing *International Shoe Co. v. Washington,* supra.

■ The facts adduced at the hearing on the authority and purpose of the vice-president of the defendant while in this state, we believe, fall within this rule.

The motion to quash the service of summons was properly denied.

The defendant also assigns as error the trial court's denial of its motion for a nonsuit.

Two arguments are advanced: First, the plaintiff did not comply with its contract to the satisfaction of the Kiewit Company in the manufacture of the surrounds; and, Second, there was no enforcible contract existing between plaintiff and defendant because there was a lack of consideration.

■ The first contention is based upon the admitted fact that the Kiewit Company was withholding moneys upon its contract with plaintiff because of faulty surrounds. This fact would have no bearing upon the issues between these parties since it did not affect the contract between the defendant and the Kiewit Com-

pany. The evidence introduced shows Kiewit was looking solely to plaintiff for relief, and, if there was a contract, as alleged and testified to by plaintiff's representatives, between the plaintiff and the defendant, the defendant received all it bargained for, and was not subjected to any injury by reason of the contract between the plaintiff and Kiewit.

■ The second contention poses a difficult problem. The general rule is that a promise to do that which one is already under legal obligation to do will not furnish sufficient consideration for a contract. *Tomihiro v. United Hotel Corp.*, 145 Or 629, 28 P2d 880; *Feenaughty v. Beall*, 91 Or 654, 178 P 600; *Hoskins v. Powder Land & Irr. Co.*, 90 Or 217, 176 P 124.

■ The defendant states the factual basis of its argument as follows:

> "An examination of the facts as alleged and proven at the trial shows that Respondent-Enco entered into its contract to supply wood surrounds to Kiewit on May 22, 1951 * * *. Kiewit entered into its contract with Appellant-Russell on May 10, 1951, or twelve days before * * *. The terms of this contract were known to Respondent-Enco at the time Respondent-Enco entered into its contract with Kiewit. Therefore, before Enco entered into any agreement to build wood surrounds for Kiewit, Appellant-Russell was already under duty to ship wood surrounds [sic, Rusco windows] to Portland, Oregon, in time to enable Enco to meet any schedule it might have regarding delivery of completed windows to the dock. Enco entered into its agreement with Kiewit allegedly acting upon Russell's promise to supply windows on time, something that Russell was already bound to do. The contract, if any, was without valid consideration and unenforceable."

It is true that the defendant was under obligation to make delivery of its Rusco windows on schedule with

Kiewit Company, but no similar obligation existed between the plaintiff and the defendant until the agreement sued upon by plaintiff came into existence.

The facts disclose that the defendant would have been unable to make a satisfactory sale of its Rusco windows to the Kiewit Company unless it could induce the plaintiff to contract directly with Kiewit to furnish the surrounds, which it did. Therefore, a benefit accrued to the defendant from its promise to make delivery in accordance with its schedule with Kiewit to this plaintiff. Also, the plaintiff assumed a primary liability for breach of contract with Kiewit, which it was not required to do. Thus this case falls within the rule of a valid contractual consideration as set out in *Cummings v. Central Oregon Bank et al.*, 110 Or 101, 223 P 236.

Defendant further contends that the lower court erred in overruling the defendant's motion for a directed verdict for the following reasons:

A. That there was no evidence that plaintiff made any attempt to minimize the alleged damages of the plaintiff with particular regard to claimed damages for additional labor, and, also, that the plaintiff offered no evidence to show that it made any attempt to gain an extension of time with Kiewit.

It is well-settled that a party injured by breach of contract or tort should do what reasonable care and business prudence require to minimize his loss. *De Carli v. O'Brien*, 150 Or 35, 41 P2d 411, 97 ALR 693; *Hahn v. Mackay*, 63 Or 100, 126 P 12, 126 P 991. And it is equally well-settled that, although the plaintiff, injured by the breach of contract, is obliged to minimize such damages, the defendant has the burden of proving that such mitigation is possible. *Paramount*

*Pictures Dist. Corp. v. Gehring,* 283 Ill App 581. Defendant by its motion for a directed verdict attempts to preclude the plaintiff from any recovery whatsoever because of plaintiff's alleged failure to minimize the damages. This is not the law. A failure on the part of the plaintiff who has been injured to make a reasonable effort to minimize or reduce the loss does not defeat recovery, but goes only to the amount of recovery. *Dippold et al. v. Cathlamet Timber Co.,* 111 Or 199, 225 P 202; *Consolidated Cut Stone Co. v. Seidenbach,* 181 Okla 578, 75 P2d 442.

 Defendant further contends that "if any damages resulted from delay in shipment, it was due to the failure on part of Respondent-Enco to take advantage of the Kiewit's waiver of time. The transcript is absolutedly devoid of any effort on part of Respondent-Enco to minimize damages, if any, and Appellant-Russell's motion for a directed verdict should have been allowed." In other words, defendant seems to say that inasmuch as plaintiff had an opportunity to get a waiver of time on the Russell-Kiewit contract, and failed to do so, it should not be allowed to complain. Such contention is unsound. Where a defendant has an equal opportunity for performance of a contract, and equal knowledge of the consequences for nonperformance, such defendant cannot avoid damages by claiming that the injured party should have performed for him. *De Carli v. O'Brien,* supra; *Walker v. Salt Flat Water Co.,* 128 Tex 140, 96 SW2d 231.

██ B. Defendant also argues that the case at bar involves a sale of goods and that the law of sales should be applied, to-wit: failure to give defendant notice of breach of promise or warranty within a reasonable time after acceptance of the goods precludes recovery.

Defendant assumes, and we think erroneously, that plaintiff was a third-party beneficiary of a contract of sale between defendant and Kiewit. Such is not the case. Plaintiff is not attempting to recover by virtue of defendant's contract with Kiewit, but under a separate oral agreement between defendant and plaintiff.

C. Defendant further contends that time was not of the essence with respect to the delivery of the windows, and that premature delivery of some of the windows (one of the allegations of damage was that defendant delivered about 2,000 windows all at once causing confusion) was not in violation of the agreements, and that any damage resulting therefrom was not within the contemplation of the parties. The facts do not bear this out.

The probable damage through delayed (or premature) delivery was well within the contemplation of the parties, as evidenced by the fact that delivery on a definite schedule was set forth in both the Kiewit-Russell contract and the Kiewit-Enco contract. If such were not the case, the contracts could have otherwise called for complete delivery of all the windows by a certain date. Such damages, therefore, were clearly within the contemplation of the parties. *Smith v. Pallay et al.*, 130 Or 282, 279 P 279.

It is further contended by the defendant that the trial court erred in refusing to give the following instruction:

"And if you find from the evidenc that plaintiff could have secured an extension of time from Kiewit to deliver its windows, or if you find that Kiewit did waive the time element in the plaintiff's contract and allowed the plaintiff an additional time to perform, then the plaintiff was not injured by the delay and cannot recover in this case."

As was stated before, defendant's contention that this was a contract of sale and that plaintiff was a buyer of goods is without merit, and, as such, an instruction with reference to the prevention of damage occasioned by any breach of a contract of sale was properly refused.

■ With respect to the requested instruction being for the purposes of instructing the jury as to mitigation of damages, the following instruction given by the trial court adequately covered that point:

> "* * * providing that one damaged has taken all available, reasonable measures to prevent or mitigate such damage."

■ The defendant also contends the trial court erred in giving certain instructions. The defendant did not except to these instructions, and it is well-settled in this state that unless an exception is taken to an instruction given the claimed error will not be reviewed. ORS 17.510.

■ Defendant's final assignment of error is based upon the admission of a letter from Mr. Raquet, vice-president of the defendant corporation, to a Mr. B. A. Taft of Northern Enterprises of Seattle, an agent of defendant. Without setting the letter forth herein, we doubt that the letter was properly admitted for impeachment purposes, but we do not believe the error prevented the defendant from having a fair trial or is of sufficient gravity to warrant a reversal of this cause.

The judgment is affirmed.