F. Gilbert LAMB (Frank Gilbert Lamb),
Plaintiff,

v.

HUSSMANN REFRIGERATOR CO., a
Delaware corporation, and Hussmann
Refrigeration, Inc., a Missouri corporation, Defendants.

Civ. No. 65–633.

United States District Court
D. Oregon.

Feb. 24, 1966.

W. L. Minnick, Minnick & Hahner,
Walla Walla, Wash., and Kenneth S. Klarquist, Buckhorn, Blore, Klarquist &
Sparkman, Portland, Or., for plaintiff.

Norman J. Wiener, King, Miller, Anderson, Nash & Yerke, Portland, Or., for
defendants.

KILKENNY, District Judge:

Before the Court is the motion of the
defendant Hussmann Refrigerator Co.
(Parent) to quash the service of process
on it, or in the alternative to transfer the
venue of the case to the District Court
of the United States for the District of
Missouri. I shall pass on the latter in a
separate order.

Plaintiff is, and for many years has been, a resident of the state of Oregon. More than ten years ago he envisioned the construction of an open-front upright refrigerated cabinet for the storage and display of frozen food products in retail stores. His efforts succeeded to a point where he secured certain patents and developed certain trade secrets which are the subject matter of this pending action.

The Parent is an outstanding, if not the leading, manufacturer and distributor of commercial frozen food cabinets in the United States. Early in March, 1960, plaintiff was invited by McMillan, president and chairman of the Parent corporation, to visit the home office in St. Louis to discuss plaintiff's patents and work in connection with the new type of frozen food cabinet. Prior to that, plaintiff had directed a letter to the Parent defendant making certain inquiries. As a result of the meeting, McMillan made arrangements to visit Weston, Oregon, with his chief engineer and there study plaintiff's invention and work out a licensing agreement. In April of that year, McMillan and his chief engineer arrived in Weston and after many conferences with plaintiff, they were permitted to examine a working model. Relying on their representations as to their expertise in the field, plaintiff agreed to grant the Parent a license and an option for a license. The form of exclusive license agreement which was tendered to the plaintiff by said officials of the Parent was agreed upon with certain minor modifications. The parties arrived at an oral agreement, this all appearing in the record and in a letter from McMillan to plaintiff dated April 6, 1960. Final agreements were signed by McMillan on behalf of the Parent and were mailed to the plaintiff where they were executed by him on June 26th and returned on the same day. The subsidiary is the exclusive sales agent of the Parent in Oregon and is admitted to do business in this state. The officers of the companies are identical for all practical purposes and for all purposes before me. The respective companies file a consolidated balance sheet and the Parent formally guarantees the obligation of the subsidiary. In national advertising, the corporations feature the name Hussmann and do not distinguish between the functions of the two corporations. The plaintiff charges that many of the machines built by the Parent and distributed and sold, through the subsidiary, were actually sold in the state of Oregon after 1960 and before the institution of this litigation. While the Parent claims that it transacts business only in the states of Delaware, Missouri and New Jersey, the fact is that the Parent corporation actually entered into, and consummated the contract in question in the state of Oregon and has continued, through its subsidiary, to do business in the state. It is true that the Parent is not licensed or qualified to do business in Oregon and has no direct officers, employees, agents or other representatives residing in said state.

It is not necessary to go into further detail as to the nature of the business transacted by the Parent in the state of Oregon.

On the entire record, I find:

(1) That aside from its contacts through its subsidiary, the Parent had sufficient business contact in the state of Oregon in the negotiation of the contract in question to satisfy due process requirements as stated in Int'l Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); McGee v. Int'l Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Enco, Inc. v. F. C. Russell Co., 210 Or. 324, 311 P.2d 737 (1957); Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965).

(1) (a) The business transacted by the Parent corporation by sending its officers into the state of Oregon to negotiate the original license agreement, the negotiations and completion of the transaction in the state of Oregon by oral agreement, the follow through on the oral agreement by the plaintiff's signing the

written agreement in the state of Oregon, and arrangement for shipment from the state of Oregon to the state of Missouri of a model for testing was, in my opinion, a sufficient transaction of business to qualify under the provisions of the Oregon long-arm statute, ORS 14.035(1)(a). The Oregon statute is discussed in a number of recent cases in this Court. Hiersche v. Seamless Rubber Co., 225 F.Supp. 682 (D.Or.1963); Hicks v. Crane Co., 235 F.Supp. 609 (D.Or.1964). This is a diversity case, and in my opinion the Oregon Supreme Court would hold, on these facts, that the Parent transacted sufficient business in the state of Oregon to justify jurisdiction under the state's statute.

■ (2) Hussmann Refrigeration, Inc., the wholly owned subsidiary of the Parent corporation, is the exclusive sales agent and department of plaintiff in the state of Oregon. McMillan, the chief officer, is in charge of the business affairs of both corporations. Previously mentioned, is the fact that the officers and directors of the corporations, for all practical purposes, are the same and, therefore, dominate the business activities of both companies. In sales literature the name "Hussmann" is the guiding "star" and no effort whatsoever is made to indicate whether it is the Parent or the subsidiary that is responsible. The executive offices of each company occupy the same suite in the same building in St. Louis, Missouri. This very close relationship and the fact that the contract was originally negotiated by the president of both corporations leads to a finding that the subsidiary should be viewed as the agent of the Parent for the purpose of service. While not entirely in point, the decision in Curtis Publishing Co. v. Cassel, 302 F.2d 132 (10th Cir.1962) is instructive and certainly deserving of serious consideration when read in the light of the present facts. Likewise, Intermountain Ford Tractor Sales Co. v. Massey-Ferguson, Ltd., 210 F.Supp. 930 (D.Utah 1962) in general, supports the plaintiff's position that the subsidiary should be viewed as the agent of the principal. Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), relied upon by the defendant, is distinguished in Curtis and it is my finding that the distinguishing features are present in this case. On this theory, there is no doubt but that the minimum contacts required by International Shoe, McGee and others are existent. For that matter, the agent is actually authorized to do business in the state of Oregon and has made numerous sales of the questioned product in this state.

■ (3) Aside from the business transactions above mentioned, I am of the belief that the "tortious act" section of ORS 14.035(1)(b) is applicable to the pleadings and the alleged acts of the defendants in this case. Here, there is no question but that the Parent corporation knew that the subsidiary was going to sell this product in the state of Oregon. The plaintiff's second cause of action is based entirely on the defendants alleged tortious conduct in using and selling refrigeration equipment of a type infringing plaintiff's claims, all in violation of the confidential relationship then existing between plaintiff and the defendants, and that such machines were, in fact, manufactured and then wrongfully and tortiously sold by the defendants in violation of the option agreement. Here, defendants can make no claim that the tort, if any, was committed outside of the state of Oregon. On the facts in this case, the tort was not consummated until the product was actually sold in Oregon, in violation of the original confidential relationship and trust. That being the fact, the long-arm statute is sufficiently broad to cover this type of a tort and encompass the service as made on the moving defendant in this cause.

I find the facts to be as above stated.

The motion of defendant Hussmann Refrigerator Co., a Delaware corporation, to quash the service of summons is denied.

It is so ordered.