Argued and submitted on defendant's demurrer to alternative
writ July 10, peremptory writ denied November 1, 1973

STATE ex rel WARE et ux, *Relators, v.*
HIEBER, *Defendant.*

515 P2d 721

*Michael R. Hogan,* Portland, argued the cause for defendant. With him on the briefs were Miller, Anderson, Nash, Yerke & Wiener and William B. Crow, Portland.

*Charles F. Hinkle,* Portland, argued the cause for relators. With him on the brief were Davies, Biggs, Strayer, Stoel and Boley, Portland.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

DENECKE, J.

The issue is whether the Oregon court can acquire jurisdiction over the Wares, plaintiffs-relators, under Oregon's "long-arm" statute.

Black Diamond Enterprises, Inc., filed an action on a guaranty agreement against the Wares. Personal service was made on the Wares in California. The Wares made a special appearance before the circuit court and moved to quash service upon the ground that the court had no personal jurisdiction over them. The circuit court denied the motion.

Pursuant to the usual practice, the Wares filed a petition for writ of mandamus in this court and ask that we direct the circuit court to quash the service. We issued an alternative writ ordering the circuit court to show cause why it had not quashed the service of summons on the Wares.

Before answering the basic question we must resolve some preliminary procedural issues.

■ The alternative writ of mandamus performs the function of a complaint. The defendant demurred to the alternative writ. A demurrer to an alternative writ has the same effect as a demurrer to a complaint; it admits all the well-pleaded facts. *International Trans. v. Bohannon,* 252 Or 356, 359, 449 P2d 847 (1969). The relators were aware of this rule. However, in their

brief and on oral argument the relators did not seek to take advantage of this rule and expressly proceeded upon the basis that the facts were to be determined from the affidavits submitted to the circuit court. They took this position because of the practical consideration that if we overruled defendant's demurrer defendant would file an answer controverting at least some of the facts alleged in the alternative writ and the case would return to us.

■ Because the parties proceeded on the basis that by demurring the defendant did not admit the facts alleged in the alternative writ, we will proceed in the same manner. Without expressly so stating, we acquiesced in this same procedure in *State ex rel Western Seed v. Campbell,* 250 Or 262, 442 P2d 215 (1969). In the future in mandamus the parties should proceed according to the rule that a demurrer to the alternative writ admits all well-pleaded facts in the writ.

In addition to the facts alleged in the affidavits, the facts pleaded in Black Diamond's verified complaint also can be considered. In *State ex rel Western Seed v. Campbell,* supra (250 Or at 274-275), we relied upon facts alleged in the complaint.

The parties disagree about the scope of our review of the facts. The evidence before the circuit court was conflicting. The Wares contend that because this is an original proceeding, we must determine the facts de novo.

■ Based upon the nature of mandamus and the relation of mandamus to appeal, we conclude that our function is to decide whether there was any evidence to substantiate the circuit court's ruling. We should not conduct a de novo review of the facts.

ORS 34.110 provides that the writ of mandamus "shall not control judicial discretion"; this is a restatement of the common-law rule.

The author of Extraordinary Legal Remedies states:

"* * * In every case the party that is to act [the circuit court in this case] must determine in the first instance whether the case is one for action, and a question of discretion is, in its essence, a question of fact. * * * [W]hen the case presents merely a question of law, the element of discretion is not involved, the only question for determination being whether, as a matter of law, mandamus ought to issue. Where the facts are disputed, and are determined upon conflicting evidence, the finding is, of course, conclusive." Ferris, Extraordinary Legal Remedies, § 211, pp 243-245 (1926).

4. We appear to have adopted this idea, that in mandamus, when the facts are in dispute, the trial court is using its "judicial discretion" in deciding the facts. "As a general rule, mandamus lies to require inferior courts to act, but it will not compel them to decide disputed questions of fact in a particular way." *State ex rel Methodist Old People's Home v. Crawford,* 159 Or 377, 386, 80 P2d 873 (1938).

█ The principle that mandamus cannot lie to control the trial court's discretion is supported by practical considerations as well as tradition. In cases in which the trial court has held it had personal jurisdiction, we have permitted mandamus to be used to test such a ruling. The ruling could also be tested by appeal. *Enco, Inc. v. F. C. Russell Co.,* 210 Or 324, 329-337, 311 P2d 737 (1957). On appeal the findings of the trial court will be sustained if there is any evidence to support the findings.

*Carlson v. Superior Court of Los Angeles County,*
56 Cal2d 431, 15 Cal Rptr 132, 364 P2d 308 (1961),
held in an original proceeding in mandamus that it did
not review de novo trial court's findings. The trial
court refused to permit a party to take certain depo-
sitions. The party petitioned the Supreme Court to
mandamus the trial court. The Supreme Court stated:

> "This leaves for determination the question of
> whether, under the facts, the trial court abused its
> discretion in making the challenged order. Of
> course, if there was any evidence that supports any
> one of the grounds urged for suppression of the
> right to take the depositions, then this court may not
> substitute its opinion for that of the trial court, and
> the order must be sustained. But if there is no legal
> justification for such exercise of discretion it must
> be held that an abuse occurred." 364 P2d at 312.

Having resolved these preliminary questions, we
may now address the question whether there is any
evidence to support the trial court's denial of the mo-
tion to quash.

ORS 14.035 provides: "Any person * * * who, in
person or through an agent * * * [transacts] any
business within this state" thereby submits "to the
jurisdiction of the courts of this state * * *." The
trial court, by denying the motion to quash, necessarily
found that the Wares did transact business within
Oregon.

As Black Diamond prevailed on the motion to
quash, we will consider the facts in a light most favor-
able to Black Diamond. Black Diamond, the plaintiff
in the action against the Wares, is a Tennessee corpo-
ration. It manufactures motor homes in Oregon
through its Cabana Coach Division. Keller Enterprises
is a Nevada corporation engaging in retail sales of

motor homes at several California locations. Rick Keller is President; Jay Ware, Vice-President; and Dulcita Ware, his wife, Secretary-Treasurer. The Wares own the majority interest in Keller Enterprises. The Wares are California residents and Jay Ware's principal business is a plumbing shop in California.

In October 1969 Black Diamond approached Keller Enterprises and the Wares at a trade show in California and attempted to interest them in buying its product. In November 1969 Keller and Jay Ware came to Black Diamond's plant in Oregon to evaluate Black Diamond's operation and negotiate a dealer franchise. During this Oregon visit Black Diamond granted Keller Enterprises a dealership.

At the close of their stay in Oregon Ware and Keller drove motor homes to California. Thereafter, Keller Enterprises continued to purchase or take on consignment motor homes from Black Diamond. Contracts for some of these purchases were signed by Jay Ware. Employees of Keller Enterprises came to Oregon to take delivery of some vehicles. The motor homes were not custom made for Keller Enterprises.

Black Diamond "factored" vehicles through H. A. Caesar & Co., Inc., a New York corporation, to assist Keller Enterprises in financing their purchases. Caesar had full recourse against Black Diamond for amounts paid it by Caesar and secured through the obligation of Keller. Black Diamond came to believe that a competitor had an interest in Keller Enterprises. Partially for this reason, Black Diamond required the Wares and Keller to execute an agreement whereby they personally agreed with Caesar to guaranty amounts due from Keller Enterprises.

The guaranty agreement was dated April 3, 1970. It was on Caesar's forms, mailed from New York, executed in California by the guarantors, and mailed to Caesar in New York. It provided it "shall be governed by the laws of, the State of New York."

In reliance upon the guaranty, Black Diamond sold motor homes to Keller Enterprises. Keller Enterprises failed to pay its obligations to Caesar and Caesar assigned its right under the guaranty agreement to Black Diamond.

Do these facts establish that the Wares transacted business in Oregon?

In *State ex rel White Lbr. v. Sulmonetti,* 252 Or 121, 448 P2d 571 (1968), we held the relator was transacting business in Oregon. The majority adopted "fairness" as the test and decided it was fair in that case to subject the relator to jurisdiction because the defendant had sufficient "contacts" in Oregon. The facts were that the Florida corporation, a lumber products wholesaler, instituted by telephone from Florida the purchase of plywood to be custom-manufactured in Oregon and shipped to Florida. The parties had done business with each other and constantly did business in interstate commerce.

On the other hand, in *Neptune Microfloc v. First Fla. Util.,* 261 Or 494, 495 P2d 263 (1972), we held the Oregon court could not secure jurisdiction under the "long-arm" statute. The plaintiff Oregon corporation solicited the defendant, a Florida corporation operating a sewage treatment plant, to purchase some settling tubes manufactured in Oregon. We held Oregon did not have jurisdiction over the defendant because: "The defendant did not have sufficient con-

tacts with Oregon and it is not a concern that does interstate business." 261 Or at 497.

If Keller Enterprises were the defendant, we would have little trouble holding that it was subject to the jurisdiction of the Oregon courts. The only distinction from the *White* case that is favorable to the Wares is that in the present case the entire transaction was instituted by Black Diamond, whereas White Lumber Co. instituted the transaction. However, the dealership agreement Keller Enterprises entered into with Black Diamond, the continual purchases by Keller Enterprises and its occasional acceptance of deliveries in Oregon gave Keller Enterprises continuous contact with this state.

The frequent physical presence of employes of Keller Enterprises in Oregon leads to the conclusion that Keller Enterprises could litigate in Oregon without such inconvenience and disadvantage as to amount to unfairness.

Keller Enterprises engaged in interstate business in Oregon.

Whether the Wares personally can be required to litigate in Oregon, however, is not so clear.

■ If we were to view the Ware's guaranty as a transaction completely separate from the transaction between Black Diamond and Keller Enterprises, the connection between the Wares and Oregon would be slender. We do not consider it realistic, however, to consider the guaranty in a vacuum. From the standpoint of "fairness" to the parties and convenience to the parties and from the standpoint of the interests of the State of Oregon, we are of the opinion that the personal guaranty of the Wares must be considered as

one aspect of the entire course of business between Keller Enterprises and Black Diamond.

According to evidence which the circuit court could have relied upon, the guaranty agreement was essential to the continuation of the business relationship between Keller Enterprises and Black Diamond. Without the agreement Black Diamond would have ceased manufacturing vehicles in Oregon for sale to Keller.

Mr. Ware had found it not inconvenient to come to Oregon to commence the contractual relationship with Black Diamond. It should be no more inconvenient for him to come to Oregon to litigate the controversy attending the termination of the relationship.

We are not specifically apprised of what, if any, defense the Wares have to Black Diamond's claim. From statements in Mr. Ware's affidavits we can infer that the Wares will contend that Black Diamond misrepresented to the Wares the intended use of the guaranty agreement. A trial of such issues will require testimony of Black Diamond's Oregon employes and the Ware's and Keller's employes. Either Oregon witnesses must go to California or California witnesses must come to Oregon. Employes of each company have come to the other's state in connection with commencement and continuation of the business. It cannot be too inconvenient to go to either state to litigate the termination of the business.

Two guaranty cases, while distinguishable upon their facts, emphasize that when the parties to the underlying transaction which was guarantied were transacting business in the forum state the guarantors also would be found to be transacting business within the forum state.

In *O'Hare International Bank v. Hampton,* 437 F2d 1173 (7th Cir 1971), an Illinois business leased an airplane to an Oklahoma corporation. Oklahomans who were the owners of the Oklahoma corporation guarantied the lease. The court held the Oklahoma guarantors were subject to jurisdiction in Illinois. The court stated:

"While the guarantors received no direct consideration, it appears there was inducement in connection with their projected interest in World Travelers [Oklahoma corporation] for them to want eventual financing of the airplane to be purchased. They should not be in the position, even though indirectly, to enjoy the fruit but to disavow the situs of the tree from which the fruit was derived. * * *." 437 F2d at 1177.

In *Salter v. Lawn,* 294 F Supp 882 (D Mass 1968), the defendant, a New Jerseyan, was the sole owner of a corporation doing its principal business in Massachusetts. The defendant guarantied loans of a Massachusetts bank to the corporation. The corporation repaid the loans immediately before bankruptcy. The trustee in bankruptcy of the corporation brought this action against the guarantor to recover preferences. Chief Judge Wyzanski held Massachusetts could obtain jurisdiction over the New Jerseyan:

"Another way of arriving at the same ultimate conclusions is to observe that the notes which had been made and paid by the bankrupt corporation in Massachusetts had previously been guaranteed in Massachusetts by defendant, and that guarantee was discharged in Massachusetts by the bankrupt corporation's payments in this Commonwealth. Where a non-resident guarantees in Massachusetts a note made in Massachusetts by a Massachusetts primary obligor, the nonresident, by virtue of the 'Long Arm' statute, is subject to service on a cause of action arising out of the guarantee. * * *. And if the

avoidance of the guarantee is a consequence of a preferential payment made in Massachusetts, an action against the non-resident guarantor to recover a preference is 'a cause of action arising [albeit indirectly] from the person's transacting * * * business in this commonwealth.'" 294 F Supp at 884.

■ The Wares contend that Mrs. Ware was never physically present in Oregon; that Mr. Ware was only in Oregon as an agent of the corporation; and that the guaranty was executed in California. We decided in *State ex rel White Lbr. v. Sulmonetti,* supra (252 Or 121), that physical presence in the state was not a prerequisite to transacting business in the state and the place where the contract was executed is not determinative of where the business is transacted. *Ferrante Equip. v. Lasker-Goldman,* 26 NY2d 280, 309 NYS2d 913, 258 NE2d 202 (1970), relied upon by the Wares, is not in accord with *White.*

■ The Wares also contend that Black Diamond is a Tennessee corporation and Oregon has no compelling interest in providing a foreign corporation with a forum. The state of incorporation is not determinative. Black Diamond's Oregon operation is the concerned organization in this litigation.

■ The Wares also urge that the clause in the guaranty providing that New York law shall apply militates against Oregon taking jurisdiction. Such a choice of law clause has a bearing on the state's interest in providing a forum. If such a clause were a paramount consideration, however, New York would be the primary forum and we cannot conceive that the Wares want to litigate this case in New York. Furthermore, from the little we know of the merits, we assume the issues will involve the contractual relation between

Black Diamond, the Wares and Keller Enterprises. These issues will not be governed by New York law.

The Wares have cited other cases holding that a guarantor who never came in the state was not transacting business. In *Misco Leasing, Inc. v. Vaughan,* 450 F2d 257 (10th Cir 1971), it cannot be determined whether the forum state could gain jurisdiction of the party to the contract which was guarantied. In *All Lease Company v. Betts,* 294 Minn 473, 199 NW2d 821 (1972), the court held the forum state did not have jurisdiction over the party to the underlying transaction. In the present case jurisdiction over the guarantors is keyed to the ability to gain jurisdiction over Keller Enterprises. Also, those decisions seem to adopt the view that some physical presence in the forum state at some time is essential. We previously rejected this view.

*D.E.B. Adjustment Company v. Dillard,* — Colo App —, 508 P2d 420 (1973), held Colorado could not obtain jurisdiction by the long-arm statute over a California mother who had guarantied her son's room and board contract with a Colorado school. The court's reasoning is general (in this type of case this may be wise), but the decision may be distinguished because the mother was not engaging in any commercial activity.

We hold there was evidence supporting the trial court's denial of the motion to quash.

Peremptory writ disallowed.

O'CONNELL, C. J., dissenting.

For the reasons developed in my dissenting opinion in *State ex rel White Lumber Sales v. Sulmonetti,* 252

Or 121, 128, 448 P2d 571, 574 (1968), I am of the opinion that the proper forum for the litigation of the action brought by Black Diamond Enterprises, Inc. against the Wares is the defendants' domicile. Therefore, the service upon the Wares should be quashed.