In the Matter of the ESTATE of
Thelma LONQUEST, Deceased.

Mary Josephine MASON, Appellant
(Petitioner below),

v.

Donald E. JONES, Administrator of the Estate of Thelma Lonquest, Deceased, et al., Appellees (Respondents below).

No. 4341.

Supreme Court of Wyoming.

Oct. 2, 1974.

Lathrop, Uchner & Mullikin and David D. Uchner, Cheyenne, James E. Schneider, North Platte, Neb., for appellant.

Donald E. Jones, Torrington; Jones, Jones, Vines & Hunkins and Raymond B. Hunkins, Wheatland; W. A. Swainson, Osborn & Grant and Maxwell E. Osborn, Cheyenne, for appellees.

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE, and McCLINTOCK, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Mary Josephine Mason has appealed from two orders, both issued in the Probate Court of Platte County in the matter of the estate of Thelma Lonquest, deceased. One was an order dismissing petition to determine distributive share filed by Mrs. Mason, who claimed to be a niece of deceased's adoptive father. The other was an order overruling Mrs. Mason's objections to first and final report of administrator (with will annexed) and petition for distribution.

Certain basic facts are essential to an understanding of the controversy. Thelma Lonquest died without issue in Platte County on July 10, 1970; and subsequently her husband, Harry L. Lonquest, was convicted of her murder. Petition was filed for the probate of her will in which she gave, devised, and bequeathed all her property except three articles of personalty to her husband. Various questions existed by reason of the murder and the proscription of any inheritance by the husband. Numerous purported heirs made appearance, and the administrator attempted to give them notice of the proceedings. Some year and a half after the petition for probate had been filed Denver B. Gearhart, Bruce Gearhart, Stanley Gearhart, and Heidi Gearhart, filed in the Lonquest probate matter a petition for declaratory judgment, alleging their relationship to Thelma Lonquest and praying for declaratory judgment of that relationship, for a declaration of the husband's ineligibility to inherit from deceased's estate, and for sale of the ranch property and other assets, that portion of the proceeds owned by deceased to be placed in the estate. Subsequently, the court set for hearing the matter of "a declaratory judgment *and determination of heirship of Thelma Lonquest* and also * * * the issue of the right of inheritance and survivorship rights to real property of Harry Lonquest as the surviving husband of the decedent." (Emphasis supplied.) [1] Thereafter, other heirs of the deceased, which we will refer to as the Phelps group, appeared. Prior to the hearing, it was stipulated between the administrator, the attorney for the husband, and the attorney for the Gearharts, that the husband of deceased had taken her life and been convicted of first degree murder, the stipulation setting out the property which the two had held jointly during their lifetime, noting the derivation of title of the realty, and stating the relationship of various parties, the Phelps and the Gearharts being related to Mrs. Lonquest both through her natural parents and the adoptive mother. It was stipulated that the heirs of Thelma Lonquest's adoptive father were unknown and could not with reasonable diligence then be ascertained. Following hearing, the court ordered that the real

---

1. Apparently the court either on its own motion or at counsel's instance expanded the implicit request for determination of the Gearhart heirship to include appellant and others.

property set forth in the stipulation be included in the estate of Thelma Lonquest, and that the administrator after the payment of the debts of the decedent, taxes, and expenses of administration, distribute all her property, one-half to the descendants of J. W. Phelps (the Gearharts) and one-half to the descendants of George Edward Phelps—it being further ordered that Harry Lonquest have no interest in the estate of the deceased. Later, an agreement was entered into by Harry Lonquest, the heirs known as the Gearhart group, and the heirs known as the Phelps group, providing that Lonquest and each mentioned group should receive one-third of the proceeds from the realty the court had determined to be the property of the estate. Thereafter, the administrator petitioned the court for the sale of the real property, received an order of the court permitting this, published notice of the proposed sale, and sent notice by registered mail to numerous persons claiming to be heirs. The property was sold, and the court entered an order confirming the sale. Shortly thereafter the appellant, purporting to act under § 2-310, W.S.1957, filed a petition to determine distributive share, asserting her relationship as the closest living relative of deceased on the side of the adoptive father, whom she asserted had survived the adoptive mother; the court ordered that all persons interested in the estate be served with notice of the petition. Upon motion and after hearing, the petition was dismissed, appeal being taken therefrom. Following this, the administrator filed first and final report and petition for distribution and published notice thereon, asking that the distribution be in accordance with the agreement, that is, one-third to Lonquest, one-third to the Gearhart group, and one-third to the Phelps group. Mrs. Mason filed objections thereto, stating her relationship to deceased and contending, inter alia, that the order entered on the declaratory judgment proceedings was invalid because the court lacked jurisdiction, that the husband as a matter of law was not entitled to share in the distribution of any

property, and requesting the disapproval of the final report. The court entered an order overruling objections to the first and final report, and appeal was also taken from that order.

Appellant argues (1) heirship is a matter of law which cannot be determined in any manner other than by compliance with specified statutes, which was absent here, and (2) she as well as other heirs was not afforded proper notice or process and correct procedures were not followed.

The first-mentioned reason for appeal seems to be grounded on a contention that there are only two methods of determining heirship of a deceased person—that provided by § 2-304, W.S.1957, and by §§ 2-310 and 2-311, W.S.1957. This view misconceives the scope of the Uniform Declaratory Judgment Act. Nothing is presented which would alter the clear provisions of § 1-1054, W.S.1957, which stated, "Any person interested as or through an executor, administrator * * * may have a declaration of rights or other legal relations in respect thereto: (a) To ascertain any class of creditors, devises, legatees, heirs, next of kin or others; or * * * (c) To determine any question arising in the administration of the estate of trust, including questions of construction of wills and other writings." The provisions of that Act are unmistakable and the remedies allowed by it were available to determine heirship of the deceased in this instance. It follows that the real questions posed by this appeal are whether there was sufficient adherence to the requisite procedures so that determination of heirship was properly accomplished by a method prescribed in the probate code or the declaratory judgment act.

In a fair analysis of the matter, it should not be overlooked that the factual situation precipitating the controversy was complicated and unique, not only because of the husband's having been guilty of deceased's death and of her having left no children but also because of the large number of persons who had or claimed some

sort of relationship sufficient to allow inheritance. Even so, this circumstance cannot be an excuse for deviating from the established procedures. Whatever may have been the cause, there was a patent lack of literal compliance with the statutory requirements· for determining heirship by any method. There is no argument that there was any attempt to follow the provisions of the probate code, the normal and usual method employed for this purpose. Although as we have indicated a declaratory judgment action was available to the parties, the petition therein did not ask for a determination of heirship but merely sought a declaration that the Gearharts were related to the deceased and that the husband be declared ineligible to inherit, asking also that the ranch property and other assets be sold and that portion of the proceeds owned by deceased be set over to the estate for probate. Further, no attempt was made to effect service on any persons except Harry Lonquest; the administrator; and Patrick Brothers, lessors of the real property. Some months later, after both the administrator and Harry Lonquest had answered the petition, the court set the matter for hearing, and in the notice thereof, as we have heretofore indicated, said that there would be a "determination of heirship of Thelma Lonquest." This notice was mailed to a large number of persons apparently thought to be heirs. Appellant was among this group, and she admits of having received a copy of the court's order. The brief and argument disclose no reason why appellant did not appear at the hearing. She now urges merely that none of the proceedings were proper and that they could not effect a determination of heirship.

The appellees make no 'claim that they followed Rule 4, W.R.C.P., relating to service of process, or that there was compliance with § 1–1061, W.S.1957, which provides, "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Instead, they merely claim that the notice to appellant was "adequate."

In that state of the record, it becomes this court's obligation to determine whether or not the declaratory judgment action could be effected in the probate court as distinguished from the district court and whether appellant had sufficient notice to give the court jurisdiction. Concerning the first point, we think any distinction between probate courts and district courts is more technical than real. Art. 5, § 10, Wyo.Const., provides, "The district court shall have original jurisdiction of all causes both at law and in equity and in all criminal cases, of all matters of probate and insolvency and of such special cases and proceedings as are not otherwise provided for." This proviso of the constitution is entirely different from that in states where probate jurisdiction is vested in probate courts separate from the courts of general jurisdiction. 8 Land and Water L.Rev. 187. Although we said in Merrill v. District Court of Fifth Judicial Dist., 73 Wyo. 58, 272 P.2d 597, 598, that under our statutes probate proceedings are entirely separate and distinct from actions either at law or in equity, we indicated in Gaunt v. Kansas University Endowment Association of Lawrence, Kansas, Wyo., 379 P.2d 825, 828, that in Wyoming the probate court was an arm of the district court. Accordingly, although it is more regular and desirable that an action for declaratory judgment be initiated in the district court under the usual civil procedures, there would seem to be no prohibition or valid objection to its being initiated by the district court in its probate arm.

In this case appellant was not made a party to the declaratory judgment action as required by § 1–1061; and she not being a party no affidavit was filed pursuant to Rule 4(f), W.R.C.P., which requires an affidavit as a condition precedent to service by publication outside the State, nor was she served. This presents an anomalous situation with an attempt to in-

ject a party into an action without proper service. The Federal court in an early decision had occasion to discuss the requirements of the Wyoming statutes which were predecessors of and substantially similar to Rule 4 and held service outside the State to be defective and insufficient where no affidavit had been filed showing that such service could not be made within the State. Simonson v. Typer, 8 Cir., 285 F. 240, 244–245. Numerous cases indicate that statutes prescribing the manner of service of summons are mandatory and must be strictly pursued. Nelson v. Robinson, 154 Neb. 64, 46 N.W.2d 892, 895. In Markey v. Connelly, Wyo., 367 P.2d 964, 965–966, we observed that service of process by publication is limited to instances where personal service is not reasonable or practical and there must be strict compliance with the statutory method. To a similar effect in discussing the requirement of an affidavit for service by publication under provisions of Rule 4(f), we said in National Supply Company v. Chittim, Wyo., 387 P.2d 1010, 1011, 1012, that the requirements of the rule pertaining to service by publication are minimal, that any omission of statements which are requisite under the rule was fatal, and that such failure prevents the court from obtaining jurisdiction. The fact that papers were forwarded to a party later is irrelevant. Grabner v. Willys Motors, Inc., 9 Cir., 282 F.2d 644, 647, 86 A.L.R.2d 994. Nonresident service-of-process statutes are in derogation of the common law and are given a strict construction; each step prescribed is jurisdictional and a condition precedent to completion of service of process upon a nonresident defendant. General Insurance Company of America v. O'Day, 144 Colo. 376, 356 P.2d 888, 890–891.

It becomes obvious that there were multiple fatal departures from established requirements. Even had there been attempted service of process, the failure to file the essential affidavit under Rule 4 would have deprived the court of jurisdiction, which defect could not be cured by the mailing of the order concerning the hearing. Accordingly, the cause is reversed and remanded for further proceedings.

Reversed and remanded.