FIRST WYOMING BANK, N. A., RAWLINS, Appellant (Plaintiff below),

v.

TRANS MOUNTAIN SALES & LEASING, INC., Neal E. Ford and Judy K. Ford, Appellees (Defendants below).

No. 5140.

Supreme Court of Wyoming.

Nov. 19, 1979.

Kermit C. Brown, of MacPherson, Golden & Brown, Rawlins, for appellant.

Franklin D. Bayless and Mary Kennedy, of Trierweiler, Bayless, Barrett & McCartney, Cheyenne, for appellees.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROSE, Justice.

This appeal concerns itself with these three related issues having to do with Wyoming's long-arm statute: (1) May a Wyoming court exercise in personam jurisdiction over an out-of-state guarantor of a loan made by a Wyoming bank? (2) Does out-of-state personal service require an affidavit under Rule 4(f), W.R.C.P.? and (3) Does out-of-state personal service by a sheriff require appointment of the foreign sheriff under Rule 4(c)(2), W.R.C.P.?

We shall answer the first question affirmatively and the second and third questions negatively.

This appeal also involves two issues of appellate procedure: (4) Is the order voiding judgment with respect to the appellees an appealable order under the facts of this case? and (5) Assuming that the order is appealable, then, under the procedural development of this case, is the first-listed issue properly before this court? We shall answer both of these questions in the affirmative.

Plaintiff-appellant, a Wyoming bank, brought suit in a Wyoming district court on a promissory note executed by Trans Mountain Sales & Leasing, Inc., a Colorado corporation, and on a personal guarantee executed by appellees, Neal E. Ford and Judy K. Ford, both residents of Colorado. Plaintiff obtained a default judgment against all three defendants.

The Fords then moved the district court to void the judgment with respect to themselves. They urged that they lacked sufficient contacts with Wyoming to justify the exercise by a Wyoming court of in personam jurisdiction over them. In addition, they argued that the Wyoming procedural requirements for serving out-of-state defendants had not been satisfied. The relevant facts relating to these contentions will hereinafter be discussed in detail.

In granting the Fords' motion, the court held: (1) Wyoming's long-arm statute, § 5–1–107, W.S.1977, allows for in personam jurisdiction over an out-of-state guarantor of a loan from a Wyoming bank, (2) but personal service outside of Wyoming is a substituted form of publication and the requirements of service by publication must be observed. The district court judge went on to hold that failure to file an affidavit under Rule 4(f), supra, rendered his judgment void with respect to the Fords. The judge further held that the plaintiff should have secured the appointment by the district court clerk of the Colorado officer who served the Fords.

We shall reverse the court's order voiding the default judgment with respect to the Fords and remand for further proceedings consistent with this opinion.

THE SUBSTANTIVE JURISDICTIONAL ISSUE: ARE THE APPELLEES SUBJECT TO IN PERSONAM JURISDICTION BY A WYOMING COURT?

██ In its findings of fact, the trial court found that Neal Ford was president of the defendant Colorado corporation and had business dealings within the State of Wyoming in his capacity as president. The court also found that Judy Ford was not an officer, shareholder or employee of the defendant corporation and that she had never

been physically present in Wyoming except once when she passed through the state on unrelated business. The court found that both Fords were residents of Colorado and that the loan guarantee had been executed in Colorado.

In a commendably able and detailed memorandum decision, the district court judge concluded that both Fords were subject to in personam jurisdiction by a Wyoming court. Section 5–1–107, W.S.1977, Wyoming's long-arm statute, provides in subsection (a):

"(a) A Wyoming court may exercise jurisdiction on any basis not inconsistent with the Wyoming or United States constitution."

The judge observed and we have said that it was the intention of the legislature to extend state court jurisdiction to the constitutional limit. See, *Olmstead v. American Granby Co.,* Wyo., 565 P.2d 108, 114 (1977). The trial judge further observed that *Olmstead* "can hardly be said [to have] exhausted the frontier" and then went on to discuss cases from other jurisdictions in which the exercise of in personam jurisdiction had been expanded considerably.

A Colorado case is very much in point. The opinion of the Colorado Court of Appeals in *Vista Financial Corp. v. Tucker,* 36 Colo.App. 412, 544 P.2d 643 (1975), although reversed in part, was affirmed with respect to the issue here under discussion. *Tucker v. Vista Financial Corp.,* Colo., 560 P.2d 453 (1977). Judith Tucker, a resident of Colorado, cosigned in Colorado a note with her husband, Herbert Tucker. Judith also signed a disbursal authorization allowing the loan proceeds to be credited to Herbert's account in a California bank. The loan was made by a California bank and Herbert was apparently in California when the loan was made. Judith was sued in California on the note but chose not to appear. When the plaintiff sought to enforce the judgment in Colorado, Judith tested the validity of the judgment in the Colorado courts on the ground that California lacked in personam jurisdiction over her.

The Colorado Supreme Court held that the California court did have jurisdiction over Judith with respect to the note that she had cosigned. Previously, the Colorado Supreme Court, in *Van Schaack & Co. v. District Court, Eighteenth J.D.,* 189 Colo. 145, 538 P.2d 425, 426 (1975), had adopted the following summary of controlling United States Supreme Court case law from a prominent Oregon Supreme Court decision:

" ' . . . [T]hree criteria can be said to define the present outer limits of *in personam* jurisdiction based on a single act: First, the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state. Second, the cause of action must arise from the consequences in the forum state of the defendant's activities. Finally, the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.' " (Quoting from *State ex rel. White Lumber Sales, Inc. v. Sulmonetti,* 252 Or. 121, 448 P.2d 571, 574 (1968)).

In applying this test to Judith Tucker, the Colorado Court of Appeals said:

" . . . [T]he assumption of jurisdiction over Judith Tucker by the California courts did not violate due process. First, by signing the note payable in California and the authorization for the California bank to disburse funds, Judith Tucker did purposefully avail herself of the privilege of acting in California, and caused important consequences there. Without her signature there could have been no disbursal of the funds in California. Second, the cause of action against her arose from the signing of the note, but even more important had there been no disbursal of funds as authorized by Judith Tucker, there would have been no cause of action. Third, the activities have a substantial connection with California in that the note was payable to a California bank and the proceeds of the original note were deposited in a California bank and disbursed in California; hence, exer-

cise of jurisdiction over Judith Tucker by the California courts was reasonable." 36 Colo.App. 412, 544 P.2d at 646.

In its memorandum decision, the court in this case noted the striking similarity between the situations of Judy Ford and Judith Tucker and then applied a virtually identical analysis to conclude that the three-pronged test of *White Lumber Sales,* supra, was met when applied both to Judy Ford and to Neal Ford.

The district court judge also found a Texas case to be analogous in which the New York guarantor of a loan made by a Texas business to his New York business was held subject to in personam jurisdiction in the Texas courts. *Gubitosi v. Buddy Schoellkopf Products, Inc.,* Tex.Civ.App., 545 S.W.2d 528 (1976).

The district court judge also relied on *White Lumber Sales,* supra, in which a Florida business was held subject to in personam jurisdiction in the Oregon courts by virtue of a telephone order to an Oregon business, albeit in a context of prior dealings.

One of the arguments advanced by the Fords in attacking the district court's conclusion that the Fords are subject to in personam jurisdiction by a Wyoming court is that the judge failed to distinguish the activities of Judy Ford as compared to Neal Ford. We think that the judge's comparison of Judy Ford to Judith Tucker in the Colorado case discussed above shows that the judge did consider Judy Ford's lesser involvement, but that he determined that even this was a sufficient contact to justify in personam jurisdiction. We find further support for the district court's ruling with respect to Judy Ford in *State ex rel. Ware v. Heiber,* 267 Or. 124, 515 P.2d 721, 726 (1973), in which the Oregon Supreme Court allowed exercise of jurisdiction over nonresident husband and wife guarantors. The wife-guarantor in that case appeared very similarly situated to Judy Ford. Id., 515 P.2d at 726.

The Fords also cite several cases in which in personam jurisdiction was not exercised in circumstances similar to those involved here. We are persuaded, however, by the authority discussed above, that the judge, acting under an express legislative command to find jurisdiction if constitutionally permissible, made a constitutionally sound determination that in personam jurisdiction could be exercised by a Wyoming court over the Fords.

## THE PROCEDURAL JURISDICTIONAL QUESTIONS: WERE THE SERVICE REQUIREMENTS MET?

The complaints and summonses were mailed to all three defendants on June 17, 1977, and the district court clerk executed an affidavit stating that the copies were mailed by certified mail marked "restricted delivery" requesting a return receipt signed by the addressee only with postage prepaid. The letters were returned, marked "addressee unknown."

Complaints and summonses were thereupon forwarded to the Sheriff's Department of Boulder County, Colorado. The "Affidavit of Service" on the back of the summons to Neal Ford recites that on August 10, 1977, an officer personally served the Fords with copies of the summonses and complaints and that service upon the corporate defendant was also made by serving Neal Ford with a copy of the summons and complaint.

On October 27, 1977, plaintiff's attorney filed with the district court an affidavit stating that the Fords had been personally served with the summonses and copies of the complaint and that no answer or motion or notice for appearance had been filed in said action and the time for answering had expired. Also, on that date, plaintiff's attorney filed with the district court an affidavit stating that he had made an investigation and determined that neither of the Fords were in the military service of the United States. A motion for default judgment accompanied the affidavits. On the same day, the judge set a hearing on the motion for 3:00 p. m. on November 11, 1977. Copies of the order setting the hearing were mailed to the defendants. On the

morning of the day set for the hearing, Neal Ford called the court and asked for a postponement indicating that he wished to attend the hearing. The judge reset the hearing. The defendants did not appear and a default judgment was entered.

Later, the Fords moved the court to set aside its judgment, which it did.

### The Affidavit Issue

The court found:

"Plaintiff did not file an affidavit under Rule 4(f) before making personal service of process on the Defendants in Boulder County, Colorado, pursuant to Section 5–1–107 W.S. (1977)."

The court concluded:

"Failure to file an Affidavit under Rule 4(f) of the Wyoming Rules of Civil Procedure prior to out-of-state personal service of process on the Defendants Neal E. Ford and Judy K. Ford, pursuant to Section 5–1–107 W.S. (1977), renders the judgment in the above-entitled action void for failure to comply with Rule 4(1) of the Wyoming Rules of Civil Procedure."

Rule 4(f), W.R.C.P., states in part:

"(f) *Requirements for service by publication.*—Before service by publication can be made, an affidavit of the party, his agent or attorney, must be filed stating that service of a summons cannot be made within this state, on the defendant to be served by publication, and stating his address, if known, or that his address is unknown and cannot, with reasonable diligence be ascertained, and that the case is one of those mentioned in paragraph (e) of this rule; and when such affidavit is filed, the party may proceed to make service by publication. . . ."

However, Rule 4(*l*)(1), W.R.C.P., states:

"(1) *Other service; personal service outside the state; service by registered mail.*—In all cases where service by publication can be made under these rules, or where a statute permits service outside this state, the plaintiff may obtain service without publication by either of the following methods:

"(1) Personal Service Outside the State.—By delivery to the defendant of copies of the summons and complaint." [Underscoring supplied]

Subsection (b) of § 5–1–107, supra, Wyoming's long-arm statute, specifically states:

"(b) When the exercise of personal jurisdiction is authorized by this section, service may be made outside this state . . . . ."

We read the above rule and statute as providing that out-of-state personal service upon a nonresident defendant is proper. In addition, we read the rules to provide for an alternative method of service—by publication—which may be utilized in certain cases. We do not find in these rules any direction that service by publication is ever required as opposed to personal service. Indeed, Rule 4(e), W.R.C.P., lists the cases in which service by publication *may* be had. It is appropriate to observe that under Wyoming law, "service of process by publication is limited to instances where personal service is not reasonable or practical." *In re Estate of Lonquest,* Wyo., 526 P.2d 994, 998 (1974). See, also, *Wuchter v. Pizzutti,* 276 U.S. 13, 19, 48 S.Ct. 259, 72 L.Ed. 446 (1928).

Nor do we read into Rule 4(f), supra, any requirement that in order to effect out-of-state service by personal delivery it is necessary to execute an affidavit stating that service cannot be accomplished within the state.

The district court felt compelled to rely upon prior case law to conclude that personal service upon a nonresident is a substitute for service by publication and, therefore, the requirements of service by publication must be complied with. In this regard, the district court relied upon a 1945 decision of this court which was written, as appellant points out, prior to the landmark federal decision of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In *Kimbel v. Osborn,* 61 Wyo. 89, 156 P.2d 279, 282 (1945), we said:

" . . . It is true that the judgment recited that 'personal service' was had

upon Van Etta at his residence in Spokane, Washington, but so far as the legal effect of such a service is concerned it merely 'is the equivalent of and a substitute for constructive service effective to the same extent as publication but only to that extent.'" (Citation omitted)

However, in the two following paragraphs, we quoted *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1878), and *Hess v. Pawloski,* 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927), for the proposition that "[t]he process of a court of one state cannot run into another and summon a party there domiciled to respond to proceedings against him." *Hess,* supra, 47 S.Ct. at 633.

*Pennoyer,* supra, held that the due-process clause of the Fourteenth Amendment prohibited a state from exercising in personam jurisdiction over a nonresident not within its borders; the forum state was restricted to exercising in rem jurisdiction over the in-state property of a nonresident.[1] *Hess,* supra, also adopted this holding, except that in *Hess* a legal fiction—that a Massachusetts official was a resident agent of a nonresident motorist—was allowed to effectively circumvent the holding that a state could not exercise in personam jurisdiction over an out-of-state nonresident.

Thus, it is seen that the above quote from *Kimbel,* supra, merely stated then-existing federal constitutional law, which, paraphrased, held that personal service upon a nonresident outside of the state could not give the forum state in personam jurisdiction over the nonresident and that such service could merely give the nonresident notice of an in rem proceeding against property of the nonresident located within the forum state.

Later, in the same year that *Kimbel,* supra, was decided, the landmark case of *International Shoe,* supra, was published, in which the United States Supreme Court said:

"Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. [Citation omitted] But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice. . . .'" 326 U.S. at 316, 66 S.Ct. at 158.

Although *International Shoe* involved a nonresident corporation, the logic was also applied to nonresident persons; *International Shoe* thus let a forum state exercise in personam jurisdiction over a person who was not physically present within the forum state and did not have an agent present in the forum state. E. g., *Vista Financial Corp.,* supra.

Thus, the modern state of federal constitutional law concerning the exercise of in personam jurisdiction by a forum state over a nonresident, coupled with our modern long-arm statute commanding our courts to exercise that jurisdiction to the constitutional limits, gives a significance to personal out-of-state service that did not exist at the time of *Kimbel,* supra. *Now,* out-of-state personal service *can* effect in personam jurisdiction over a nonresident. The discussion of out-of-state personal service in *Kimbel* is obsolete.

Appellees also cite a case from the Eighth Circuit at a time when the Eighth Circuit included Wyoming. In *Simonson v. Typer,* 8 Cir., 285 F. 240, 245 (1922), the court, in interpreting Wyoming law, held:

"To authorize service outside the state an affidavit must be filed showing that service of summons cannot be made within the state. *First State Bank of Addington v. Lattimer,* 48 Okl. 104, 149 P. 1099."

*Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

---

1. We need not consider later federal developments dealing with in rem jurisdiction. E. g.,

■ Preliminarily, we observe that we are not bound by a federal circuit court decision. However, it is appropriate to consider the case. The then-existing Wyoming statutes did not require such a result—neither . do our current rules and statutes. Therefore, the authority for the statement came from the Oklahoma case cited. Turning to that case, we find an equation of out-of-state service to service by publication. Id., 149 P. at 1101. When the Oklahoma case was decided in 1915, out-of-state service was still denigrated into a form of service by publication. *Pennoyer,* supra. Publication is an inferior form of service to personal delivery. *Lonquest,* supra. Therefore, there was a rational reason for requiring an affidavit showing that service by the preferred method—personal delivery—was not possible and that service by publication was permissible. This logic is reflected in our modern Rule 4, W.R.C.P.

■ Because service by publication is a less preferred method of service, its use is restricted to those instances listed in Rule 4(e), supra. Then, as an additional due-process safeguard, there is the requirement of Rule 4(f), supra, that even in these special cases service by publication won't be allowed unless an affidavit is filed showing that personal service within the state is not possible. (We need not consider here whether the inconvenience of personal delivery out of state will satisfy the requirements of *Lonquest,* supra, and *Wuchter,* supra. See, also, *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).)

■ Returning to the Eighth Circuit and Oklahoma cases just discussed, we are compelled to point out that in both of these cases out-of-state service by personal delivery was accomplished. Thus, even in those cases the requirement of an affidavit was a formalism. But it was a formalism based on the then-existing theory of out-of-state personal service. We do not feel that it is unfair to exercise our prerogative to disregard the Eighth Circuit's 1922 interpretation of Wyoming law based on an obsolete legal theory.

Appellees also cite *Lonquest,* supra, in which we reproduced the Eighth Circuit holding without disapproval. *Lonquest,* supra, at 526 P.2d 998. In *Lonquest,* the appellant had not been personally served— as he had been in the Eighth Circuit case— and we therefore regard the discussion in *Lonquest* of the Eighth Circuit case as dictum.

Moreover, *Lonquest* contains what we consider to be a correct statement of the law on Rule 4(f), supra:

"Rule 4(f) . . . requires an affidavit as a condition precedent to service *by publication* outside the State . . . ." Id. at 997. [Emphasis supplied]

In addition to the lack of controlling authority for reading into Rule 4(f) a requirement not found within its boundaries, there is yet a second reason for holding that a Rule 4(f) affidavit should not be required in this case. The affidavit required under Rule 4(f) requires a statement that the case is one of those enumerated in Rule 4(e), supra. Rule 4(e) lists instances in which service by publication may be had. Under the authority of *Lonquest; Wuchter;* and *Mullane,* supra, as well as the language of Rule 4(e), we do not think that in personam jurisdiction over the Fords could have been obtained under Rule 4(e) allowing for service by publication. If this is so, then the statement required by the Rule 4(f) affidavit would be a falsehood. The law not only does not demand this, but will not condone it. There is no reason to go beyond the literal language of a rule for the purpose of achieving an absurd result.

We hold that Rule 4(f), supra, is not applicable to personal service either within or without the state.

*The Appointment Issue*

■ The district court found:

"10. Plaintiff did not secure the appointment of the Sheriff of Boulder County, Colorado, or his undersheriff or deputy, under Rule 4(c)(2), W.R.C.P., prior to personal service of process by said Sheriff or his undersheriff or deputy on

the Defendants in Boulder County, Colorado."

The court concluded:

"The failure to first secure the appointment of the Sheriff of Boulder County, Colorado, in and of itself, is a requirement, if technically applied, which is unreasonably harsh and should not intervene to defeat otherwise perfected service through which rights have vested by judgment. However, the Court does not find it necessary to make a determination of this issue for disposition of the motion."

Rule 4(c)(1) and 4(c)(2), W.R.C.P., provides:

"(c) *By whom served.*—Process may be served:

"(1) Within the state, by the sheriff of the county where the service is made, or by his undersheriff or deputy, or, at the request of the party causing same to be issued, by any other person over the age of 21 years, not a party to the action, appointed for such purpose by the clerk;

"(2) In another state or United States territory, by the sheriff of the county where the service is made, or by his undersheriff or deputy, or by a United States marshal, or his deputy, or any other person over the age of 21 years, not a party to the action, appointed for such purpose by the clerk;"

We are immediately confronted with a semantic quarrel over whether the phrase "appointed for such purpose by the clerk" in subsection (2) modifies only "any other person . . . " or whether it modifies "sheriff of the county where the service is made" as well.

Appellant points to subsection (1) and argues that the parallel language must be interpreted so that "appointed for such purpose . . . " only modifies "any other person." This is necessary, appellant argues, since the in-state sheriff of subsection (1) is already appointed by Wyoming law. § 18–3–604, W.S.1977. Appellant argues that a similar intent can be inferred when reading the parallel subsection (2).

Appellees cite *Simonson v. Typer,* supra, 285 F.2d at 245, for the proposition that Wyoming law requires that an out-of-state server be appointed by the forum court clerk. However, the holding in that 1922 Eighth Circuit case was specifically based on § 5627, W.C.S.1920. That section has now been replaced by the above ambiguous rule and *Simonson* is no authority in the present dispute.

We decline the invitation of both sides to examine a summons form prepared by the Mills Company of Sheridan in the hopes of resolving this ambiguity.

Faced with what we perceive as a genuine ambiguity in the rule and a lack of controlling authority, we will resolve the ambiguity by resorting to public policy considerations. Sheriffs and their deputies customarily serve process; we see no due process or other need to appoint an out-of-state sheriff to have him serve. However, the legal profession has a duty to serve the public as efficiently as possible and this creates a need to streamline legal procedures whenever it is possible to do so without undesirable consequences.

We hold that Rule 4(c)(2), supra, does not require the appointment by the clerk of a "sheriff of the county where service is made, or . . . his undersheriff or deputy, or . . . a United States marshal, or his deputy."

## IS THE ORDER AN APPEALABLE ORDER?

■ Appellees argue that the order setting aside the judgment with respect to themselves is not final because appellant is free to refile this action against the Fords observing the procedural requirements held necessary by the district court. One of these requirements is that the appellant's counsel file an affidavit under Rule 4(f), stating, among other things, "that the case is one of those mentioned under paragraph (e) of this rule." Appellant's counsel replies that he could not honestly swear to such a statement and that therefore the judge's order vacating the judgment with respect

to the Fords is a final order. In view of our discussion above of the affidavit issue, we accept appellant's argument. See Rule 1.05, W.R.A.P., which defines a final order.

## THE ISSUE OF WHETHER AN ISSUE IS PROPERLY BEFORE THIS COURT

After the district court judge voided his judgment with respect to the Fords for the reasons already explained, plaintiff-appellant appealed, arguing that the requirements for serving the appellees had, indeed, been met. Appellees naturally responded by arguing that the district judge was correct in determining that all of the service requirements were not met. In addition, appellees urged that the district judge had been wrong in determining that a Wyoming court could exercise in personam jurisdiction over the appellees. Appellant responded with a reply brief urging that the appellees could not raise this latter issue because they had not filed a separate appeal. We disagree. We recently discussed a similar issue in some detail and concluded:

"... [A] non-appealing party may not attack the ultimate effect of the judgment below but may support it by any matter appearing in the record. The rejection of a contention, argument or theory in support of a claim does not reject the final upholding of the claim itself. A party need not cross-appeal in order to support a claim allowed in the district court by urging the validity of a contention, argument or theory specifically rejected by the trial judge as a basis for its allowance of the claim. . . ." *Wyoming State Treasurer v. City of Casper*, Wyo., 551 P.2d 687, 693 (1976).

The ultimate effect of the district court's disposition of the case was to leave the appellees as they were. Appellees-defendants, it may be presumed, were delighted with this outcome. They need not cross-appeal to advance an alternative theory, offered to and rejected by the district court, which would support the district court's ultimate disposition of the case.

The order of the district court voiding its judgment with respect to the Fords is reversed. The case is remanded for further proceedings consistent with this opinion.